UNITED STATES DISTRICT COURT

OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARCUS BYNUM, et al. | |
| Plaintiffs | |
| v. | Civil Action No: **02-956 (RCL)** |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | Next Event: None scheduled |
| Defendant | |

### PLAINTIFFS' SECOND MOTION TO COMPEL PRODUCTION OF DATABASE DISCOVERY; TO COMPEL ATTENDANCE AT DEPOSITIONS; TO IMPOSE SANCTIONS; AND TO REFER TO MAGISTRATE

Plaintiffs respectfully move[1] this Court for an order compelling Defendant District of

Columbia to produce: (1) records from selected fields  specified below, from the DC Jail's database

("Jail database"),  the District of Columbia Superior Court's database ("Superior Court database"),

and the entire Records Office "discrepancy" databases (databases that records all persons

prematurely released or overdetained, as well as other data); (2) code documentation and other

documents (in electronic format where available) required to interpret, program and decode the

databases, including documents explaining any codes used in the databases, and (3) persons most

knowledgeable about the databases for depositions ("database discovery").  Plaintiffs also move this

Court to refer the remaining outstanding discovery issues in the case to Magistrate Judge J.M.

Facciola for resolution.

---

[1] This is plaintiffs' second motion to compel production of the database discovery.  Plaintiffs filed
their first motion to compel database material (docket # 97) on August 26, 2003. Defendant filed an
opposition (docket # 102) on October 10, 2003 (approximately one month after the deadline for
filing a responsive pleading).  Plaintiffs filed their reply (docket # 103) on October 22, 2003.

1

Database discovery is relevant to both class and merits issues.  Plaintiffs' computer expert, Richard Berk, Ph.D., has previously stated by affidavit[2] that he could fashion a computer program that would enable him to combine the Jail database and Superior Court database data in order to:

> ➢ identify class members including compiling (1) a list of every person who was overdetained and the length of the overdetention,  and (2) a list of every person who was returned to the DC Jail with no other pending cases, detainers or warrants, and was then subjected to a blanket strip search after a judge ordered his/her release;

> ➢ compile an arrest and conviction history of class members to create a statistical profile of the class for use in calculating damages whether needed for settlement or trial; and

> ➢ identify a scientifically chosen, statistically significant "sample" of each class so that plaintiffs can try damages on a class-wide basis utilizing sampling and other statistical methodology.

Plaintiffs' requests are narrowly tailored.  The data is easily accessible, active online data, so that production of the data is not burdensome.

Nonetheless, defendant has consistently refused to produce the raw data from the databases solely on the basis of boilerplate objections.  The District has produced certain documentation and data dictionaries, but has not produced any records from either the Jail database or the Superior Court database in this case.  The District has produced some records from the discrepancy databases

---

[2] Plaintiffs' Exhibit 31,  ¶¶17, 18.  Professor Berk's affidavit was filed as Plaintiffs' Exhibit 31 to plaintiffs' second motion to certify the Strip Search Class, filed on 5/5/03 (docket # 83).  Professor Berk stated in  ¶16 of his affidavit that he could merge the Superior Court database and Jail database data if it were determined that the Superior Court database data were needed.  Professor Berk stated in  ¶18 of the affidavit that he had merged data from two databases in a similar case involving overdetention and illegal searches of persons ordered released.

relating to overdetentions but not late releases.

Defendant's delay in producing the database discovery causes delay in every other phase of the case, obstructs class counsel's ability to communicate with class members, and thereby prejudices plaintiffs' ability to prosecute their case.  Plaintiffs cannot determine the actual number of overdetentions, or the length of each overdetention in the class period, or even confirm that overdetentions are still occurring and in fact are on the rise[3] in recent months, without the database discovery.  This database discovery is essential for plaintiffs to evaluate the need for a motion for a preliminary injunction, and to support a motion for summary judgment on both the Overdetention and Strip Search Claims.  The data is also essential for plaintiffs to create a profile of the arrest and conviction of class members in support of their proposed plan to try damages on a class-wide basis, and to identify a sample of the class as outlined in plaintiffs' Proposed Trial Plan, (docket # 98) filed September 8, 2003.  Finally, plaintiffs need the data to conduct surveys, informal interviews, and depositions of class members for purposes of determining liability and damages.

Moreover, the District's withholding identities of class members not only violates Rules 23 and 26, it also interferes with class counsels' right to communicate with their clients.  Cobell v. Norton, 212 F.R.D. 14, 20 n.8 (D.D.C. 2002) (attorney-client relationship created between the class counsel and all class members when the class certified).  Plaintiffs' counsel cannot conduct surveys,

_____

[3] According to a letter from the Public Defender Service, dated October 23, 2003, addressed to Rufus King, Chief Judge of the District of Columbia Superior Court, Todd Dillard, United States Marshal for the District of Columbia Superior Court, and Odie Washington, Director, District of Columbia Department of Corrections, overdetentions are on the rise again in recent months. Plaintiffs' Exhibit 38.  (The last exhibit number in plaintiffs second motion to certify the Strip Search Class was Plaintiffs' Exhibit 37.)  Evidence of overdetentions collected informally by plaintiffs' counsel confirm the statements in the letter.  For example, Anthony Watson, DCDC 283205, was ordered released on 2/**22**/04 (pre-trial release in case M418-04), but he was not released from DOC custody until 2/**27**/04, a five day overdetention.

informal interviews, or depositions of class members until the class members have been identified.

I.      ***CONSENT SOUGHT, BUT NOT OBTAINED***

Plaintiffs have attempted to obtain consent from Defendant to the relief sought in this

motion.  Defendant does not consent to the relief sought in this motion.  LCvR 7.

II.     ***BACKGROUND AND STATUS OF CASE***

This is a §1983 class action case alleging the overdetention of inmates in the DC Jail past

their court ordered release dates ("Overdetention Claim"), and blanket strip searches of inmates

returning from court after a judge has already ordered their release ("Strip Search Claim").  This

Court certified an Overdetention Class on March 31 (docket # 69), and the Strip Search Class on

August 11, 2003 (docket # 93).  This Court has previously entered orders denying defendant's

motion to dismiss the Strip Search Claim (docket # 37, November 18, 2002) and defendant's motion

for summary judgment on the Strip Search Claim (docket # 70, March 31, 2003).

III.    ***DATABASE DISCOVERY REQUESTED BY PLAINTIFFS; RELEVANCE OF THE
        DATABASES TO CLASS AND MERITS ISSUES***

In their first document production request propounded to defendant in March, 2003,

plaintiffs requested, among other things, documents (electronic documents) relating to the Jail

database, CRYSIS ("legacy' or predecessor database replaced by  the Jail database), the Superior

Court database and "discrepancy" databases.  The chart below shows the data contained in each

database, and the Relevance of each database.

| Name of database | Data stored in database | Relevance of database |
|---|---|---|
| **JACCS-Jail database** | Inmates detained in DC Jail, information about basis for | Rule 23 class list for both classes; length of detention for |

| | | |
|---|---|---|
| | detention and release, including date inmate left Department of Corrections custody | members of Overdetention Class; establishes scope of erroneous/late release problem; criminal history profile of class |
| **CRYSIS (predecessor Jail database replaced by JACCS)** | Inmates detained in DC Jail, information about basis for detention and release (this is the legacy database used before introduction of JACCS-Jail database) – plaintiffs are not requesting this database separately as plaintiffs believe, based on the deposition testimony of the DOC IT Director, that the CRYSIS data was migrated into Jail database when Jail database came online | Rule 23 class list for both classes; length of detention for Overdetention Class; establishes scope of erroneous/late release problem; provides a criminal history profile of each class member |
| **Superior Court database - CIS** | District of Columbia Superior Court criminal information database. Fields here show a claimant's incarceration in the DC Jail, charge on which held, disposition of case, date entitled to release, every individual in the District of Columbia Superior Court system who is detained on a charge, (2) the charge he is/was detained on, (3) the date the detention began, (4) the date of each court appearance (5) the | Identifies members of both classes,  length of detention of Overdetention Class members, and criminal history profile; data in this database can be used to cross check and supplement in data in Jail database, especially for period prior to introduction of Jail database |

| | disposition of the charge and the date of the disposition, (6) the sentence, if any; and (7) any suspended portion of the sentence | |
|---|---|---|
| **Records Office Discrepancy databases (record persons prematurely released and overdetained, and other data)** | Maintained by Records Office from August 2002 through present; contains name and unique DCDC number of every person mistakenly released before his release date, or released after his release date; and reason for erroneous release, and other information about why an inmate was held past the disposition of his local cases | identifies class members and scope of overdetention problem |

IV.   ***PLAINTIFFS' DATABASE DISCOVERY REQUESTS SEEK ONLY RECORDS FROM SELECTED FIELDS FROM A LIMITED TIME PERIOD***

Plaintiffs are not asking for the entire Jail database and Superior Court database. Plaintiffs are asking only for records for a specified time period, which has been identified as basically the class period, of selected fields from each of the Jail database and Superior Court database. Plaintiffs have identified the fields by taking 30(b) (6) depositions of District of Columbia employees. The fields plaintiffs require from the Jail database are identified by table[4]. The fields

---

[4] Generally speaking, the tables refer to data entry screens. Each screen has several data entry fields. The data entry fields are organized in tables according to function. For example, there is a booking screen, a charge screen, a disposition screen, etc.

required from the Superior Court database are identified by data entry screen.  Defendant identified

Steve Faruk as the person most knowledgeable about the Jail database data entry fields which

correspond to the field names in the Jail database.  Defendant will not produce Steve Faruk.  See e-

mail sent 10/24/03 to Robert Utiger, Maria Amato and Veronica Porter.  Kenneth Foor, head of IT

at Superior Court, indicated he has staff who can perform the same function for the Superior Court

database.  Defendant has thus far not produced that person for a deposition.

| DATABASE | DATA REQUESTED |
|---|---|
| Jail database | Records from fields in the following tables:  BOOKING, BOND, BLOCA, BONDMASTER, CHARGE HISTORY, CHARGES, DETAINER, DISPOSIT, GOOD TIME, GRIEVE, MOAD, OSF, PHAUDIT, RCLOCA, RTYPE, SCOM, TRHIST. |
| Superior Court database | Each field in the Superior Court database corresponding to each entry in the one page "Update Final Disposition" data entry screen on page 3 of Plaintiffs' Exhibit 3 from the Foor-Cipullo deposition. |
| Discrepancy databases | Entire databases |

Plaintiffs have requested that defendant produce the Jail database and the Superior Court

database records in a delimited free format, delimited by a character that is not in the field, with

labels in the first line, on a CD or other commercially common medium.  Plaintiffs request the

Records Office discrepancy databases in the format in which they are maintained (Lotus Notes) on a

CD or DVD.  Plaintiffs request the data from the date the original complaint was filed up to the

present, except that plaintiffs request the data showing arrest and criminal history going back five

years from the present date.

V.    ***PLAINTIFFS' DOCUMENT PRODUCTION REQUESTS AND DEFENDANT'S RESPONSES***

   *1.*      ***Databases Are Clearly Discoverable Under The Federal Rules Of Civil Procedure***

   Computer information is discoverable under Rule 34 as a matter of course.  Fed. R. Civ. P. 34(a) (document(s) include "data compilations from which information can be obtained").  See e.g. Zubulake v. UBS Warburg LLC, 217 F.R.D. 309 (S.D.N.Y. 2003).  As long ago as 1990, in an employment discrimination class action, this Court ordered an employer to produce two of its "data base[s]**,** in computer readable form, with hard copy documentation required to interpret, program and decode the data".  Martin v. Potomac Elec. Power Co., 1990 U.S. Dist. LEXIS 11688, at *48-*50 (D.D.C. 1990).  This Court has approved the discoverability of computer databases in at least two recent cases.  In Cobell v. Norton, 96-1285 (RCL), the parties have been using discovery of databases and analyzing the data in them in the "Indian Trust Fund" litigation pending before this Court.  Alexander v. FBI, 186 F.R.D. 137, 1998 U.S. Dist. LEXIS 22392 (D.D.C. 1998), dealing with the sufficiency of a 30(b)(6) deposition notice of the person most knowledgeable about one of the White House Office databases, clearly contemplates the eventual production of the database if found to be within the scope of Rule 26.

   Moreover, case law from other Circuits construing Rules 23, 26 and 34 shows that requesting and obtaining raw data in databases is a standard operating federal discovery procedure in cases such as this.  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 354 (1978) (Rule 23 is an additional, independent basis for discovery of class list data); Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1382 (7th Cir. 1993) (sanctions for failing to produce database that contained raw data regarding commissions on each policy sold); National Union Electric Corp. v. Matsushita Electric Industrial Co., 494 F. Supp. 1257 (E.D. Pa. 1980); Anderson v. Cornejo, 2001 WL 219639, at *5,

*6 (N.D. Ill. Mar. 6, 2001) (in case challenging discriminatory strip searches, the court ordered defendants to provide plaintiffs with passengers' identifying information from computer databases of passengers who had landed at O'Hare International Airport). Symposium: Emerging Technologies and the Law: Article: A Practitioner's Overview of Digital Discovery, 33 Gonz. L. Rev. 347 1997/1998.

### 2. *The District Has Not Made Only Boilerplate Objections To The Data Discovery Requests*

Each of the District's objections is analyzed separately below. As this court has already noted on numerous occasions, "the party objecting to . . . discovery bears the burden of "showing why discovery should not be permitted." Alexander v. FBI, 194 F.R.D. 299 (D.D.C. 2000).

At no point in either its objections or its opposition to plaintiffs' first motion to compel has defendant explained **why** it will not produce the database discovery. The District has not made any well founded objections to the data discovery requests in either its objections to the original document production requests, or in its opposition to plaintiffs' first motion to compe1. The District's objections do not state, by affidavit or otherwise, why it is unable to produce the data plaintiffs have requested. Like counsel for PEPCO in Martin v. Potomac Elec. Power Co., 1989 U.S. Dist. LEXIS 15407 n. 14 (D.D.C. Dec. 21, 1989), [The District]'s counsel responded to a request for production of documents by stating "general objections**",** and then responded to each specific request with a laundry list of these "general objections." Counsel did not explain how each of its objections applied to the request at issue; did not identify specific documents which it refused to produce, did not indicate the grounds for such refusal, and did not otherwise provide information which would allow plaintiff or the court to evaluate the District's objections in a meaningful way. Id. This Court characterized such objections as "sanctionable" because responding to a request for

production of documents by stating "general objections", and then responding to each specific request with a laundry list of these "general objections", fails to responsibly present the defendant's position, thus forcing plaintiffs' counsel -- and ultimately this Court -- to spend considerable time and energy in response.  Id.

The District's failure to provide **any** information which would allow plaintiffs or the Court to evaluate the District's objections in a meaningful way has caused the plaintiffs to spend a great deal of time and money in discovery just to identify and evaluate defendant's objections.

3.      *Plaintiffs'  Document Production Requests Are Narrowly Tailored*

Plaintiffs' requests are narrowly tailored, and use the least intrusive and least burdensome method[5] of conducting database discovery of obtaining information about the databases in order to generate narrowly drawn Rule 34 data requests rather than simply asking for an entire mirror image of defendant's databases.

On page 2 of its opposition to plaintiffs' original motion to compel (filed 10/10/03, docket # 103) defendant stated, "The plaintiffs have demanded from defendants the entire substantive database of the Superior Court Criminal Branch, and the D.C. Department of Corrections, dating back three years."  This is simply not true and misstates plaintiffs' position.  In an e-mail[6] to Ms.

_____

[5] The classic approach to computer discovery, which plaintiffs have used in this case, is to obtain the technical manuals, notice a 30(b)(6) deposition of persons most knowledgeable about the computer system, and then make a Rule 34 demand for "data compilations" in electronic format in a form readable by the demanding party.  Arent, Brownstone and Fenwick, Essay: Ediscovery: Preserving, Requesting & Producing Electronic Information, 19 Computer & High Tech. L.J. 131, 169 (2002).

[6] "In Bynum, we have requested database manuals and other documents that describe the databases, their fields or structure, including a data dictionary for the Superior Court and DOC computers.  A

Maria Amato, counsel for defendant, dated 6/4/03, more than four months earlier, when she began working on the case, plaintiffs' counsel explained that the only fields plaintiffs were requesting were the fields with data needed to identify class lists, lengths of overdetention, criminal history profile, and sampling data.  (Professor Berk's affidavit, filed 5/5/03 (docket # 83), makes the same point.)

Plaintiffs requested documents and noticed depositions to obtain technical information about the two databases in order to narrow the requests in order to avoid requesting the entire databases since defendant would not produce that information informally.  Defendant provided some of the needed documents and produced some deponents.  However, just as plaintiffs were on the cusp of getting a list of the fields by field name, defendant stopped producing deponents, for no apparent reason other than Ms. Amato's threat of "war" during depositions unless Plaintiffs withdrew their first motion to compel.  E-mail from Maria Amato dated September 24, 2003.  Defendant has thus far refused to produce deponents on the Jail database or Superior Court database systems since October 7, 2003.  Therefore, any objection based on burdensomeness or over-breadth should be overruled.  Defendant is effectively preventing plaintiff from narrowly describing the requested fields by withholding the depositions of those persons most knowledgeable about the databases in question.

---

"data dictionary" lists the "field specification" of each field in the computer.  Our expert can then study these materials, and **compile a list of fields that he needs** to obtain information about overdetentions, persons who were strip searched after a judge ordered their release (and they had no other holds) and a statistical profile of the class based on the factors we (or the parties if we settle or if you decide to participate) intend to use in valuing claims, and for other "sampling" purposes.  We would then request those specific fields in tab delimited format on a medium such as a CD or a DVD (not a tape). " (Emphasis added)

VI.    *JACCS: JAIL DATABASE COMPUTER*

JACCS or the Jail database is the jail's computerized inmate population accounting system.

The Jail database has personal information about inmates as well as information relative to arrest,

charges, temporary releases for court appearances, bonds, detainers, sentences and, in the case of

sentenced inmates, sentence, and the inmate's projected release date.  Plaintiffs' requested the Jail

database data as follows:

> **15.    Produce every WRITING relating to the creation, operation, modification, installation, maintenance and use of JACCS and components and related systems which has been used or in effect at any time from May 14, 1999 to the date of production in accordance with this document production request including all manuals for the  JACCS system including any user manual, systems design manual, software requirements manual, and test plan including all tables of contents and/or indexes for such document if any such documents have more than one table of contents or index.**

The District objected as follows:

> **See Response and objection to Specification 12, above.  Additionally, the District will produce for inspection and copying at HQ the data plan for the development of JACCS. [the objection to document production request 12 was: The District objects to this specification as vague, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  Subject to the foregoing objection, the District will produce for inspection and copying at HQ the system implementation plan for JACCS, which refers to CRISYS, the Request for proposals to develop JACCS as a replacement for CRISYS; and a memorandum from the director of DCDC to other law-enforcement agencies covering the implementation of JACCS.]**

<u>Vague</u>.  Plaintiffs' request is not vague.  Plaintiffs clearly state by name what they wanted the

District to produce.  Moreover, defendant waived the objection because defendant did not specify

how the request is vague.  "[T]he party objecting to . . . discovery bears the burden of "showing

why discovery should not be permitted."  <u>Alexander v. FBI</u>, 194 F.R.D. 299 (D.D.C. 2000).

Regardless, plaintiffs have remedied any vagueness by further clarifying the items requested in e-

mails on numerous occasions.

Relevance.  The database discovery is relevant under Rule 23[7] because it will produce essential

class lists for both the Overdetention Class and the Strip Search Class.  Oppenheimer Fund, 437

U.S. at 354.  The database discovery is reasonably calculated to lead to the discovery of admissible

evidence under Rule 26 because it will produce the length of overdetention for each Overdetention

Class member, and a statistical profile of the arrest histories of members of both classes.  This is

essential information that will allow plaintiffs to value the case, and to prove damages on a class-

wide basis using sampling.

Moreover, evidence of numerous overdetentions and premature releases over a long period

of time supports plaintiffs' theory of the case:  the DC Jail's inmate management system collapsed,

the District acquiesced in the collapse, and the District had no policy to monitor overdetentions.

Zearley v. Ackerman, 116 F. Supp. 2d 109, (D.D.C. 2000) (agency's history of delayed payments so

open and notorious that delayed payments can only be the result of deliberate indifference on the

part of the high-level policy makers with the ability to stop them).

Overbroad.  Defendant made no showing that the request is overbroad with respect to time or scope,

Pulliam v. Cont'l Cas. Co., 2003 U.S. Dist. LEXIS 10010, *11-12 (D.D.C. Jan. 24, 2003), or

respond to the request to the extent the request was not overbroad.  See Jackson v. Montgomery

Ward & Co., Inc., 173 F.R.D. 524, 528-529 (D. Nev. 1997) (Rule 33(b)(1) requires the objecting

party to answer to the extent the interrogatory is not objectionable, and Rule 33(b)(4) requires

---

[7] This Court approved Professor Berk's proposal for using District of Columbia databases to identify class members in Bynum v. Dist. of Columbia, 214 F.R.D. 27, 41 (D.D.C. 2003) (granting motion to certify Overdetention Class); Bynum v. District of Columbia, 217 F.R.D. 43, 50 (D.D.C. 2003) (granting motion to certify Strip Search Class).

objections to be stated with specificity).

<u>Unduly burdensome</u>.  The party opposing discovery must make a specific showing supported by a declaration as to why the production sought would be unreasonably burdensome.  <u>Pleasants</u>, 208 F.R.D. at 12.  "Boilerplate" objections are insufficient on their face.  <u>Id</u>.

It is not burdensome for the District to produce the database discovery because the data is active, online data.  Deposition of Keith Godwin, Vol. III, October 20, 2003, Page 69 (all pages containing quotations from deposition quoted herein are attached as Plaintiffs' Exhibit 41).  Courts and computer experts have recognized a distinction between "accessible" electronic documents such as active, online data and "inaccessible" electronic documents such as data on backup tapes.  <u>Zubulake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 318 n.51  (S.D.N.Y. 2003) <u>citing</u> <u>Cohasset Associates, Inc., White Paper: Trustworthy Storage and Management of Electronic Records: The Role of Optical Storage Technology</u> 10 (April 2003) ("White Paper"); <u>McPeek v. Ashcroft</u>, 202 F.R.D. 31, (D.D.C. 2001).  Whether the production of documents is unduly burdensome or expensive turns primarily on whether the documents are kept in an accessible or inaccessible format; a distinction that corresponds closely to the expense of production.  217 F.R.D. at 318.  The most accessible data is active, online data.  <u>Id</u>.  Examples of online data include data on hard drives.  <u>Id</u>.  Jail database, Superior Court database and the Records Office discrepancy database are all active online data on hard drives.  Deposition of Keith Godwin, Vol. III, October 20, 2003, Page 69.

VII.   ***SUPERIOR COURT DATABASE***

The Superior Court maintains the Superior Court database to track both closed and pending Superior Court criminal cases.  The Superior Court database has fields which show (1) every defendant in the District of Columbia Superior Court who is/was detained on a charge, (2) the

charge he is/was detained on, (3) the date the detention began, (4) the date of each court appearance

(5) the date and disposition of the charge,  (6) the sentence, if any and, (7) the portion of the

sentence that was suspended, if any.  Thus, the Superior Court database can give  an Exit Date for

every class member who does not have detainers, warrants or District Court cases.

Plaintiffs' document production request for the Superior Court database data:

**60.    Produce every WRITING relating to the creation, operation, modification, installation, maintenance and use of the "SUPERIOR COURT COMPUTER SYSTEM and every WRITING related thereto including a data dictionary (as described above) and every WRITING containing a lesson plan or instructions including any use manual, systems design manual, software requirements manual, and test plan including all tables of contents or indexes which has been used or in effect at any time from May 14, 1998 up to the date of production in accordance with this request.**

The District objected as follows:

**The District objects to the Specification as unduly broad and not reasonably calculated to lead to the discovery of admissible evidence.**

<u>Relevance</u>.  The Superior Court database data is relevant to identifying class members'[8], length of

detention, a statistically valid sample of the class, and an arrest and conviction profile of  class

members for use in trying damages on a class-wide basis.

The Superior Court database and the Jail database (and the previous DOC database

CRYSIS) are interrelated components of the District of Columbia' inmate management system.

Both databases capture much of the same data about every in-custody inmate (e.g., PDID, DCDC,

---

[8] This Court approved Professor Berk's proposal for using District of Columbia databases to identify class members in <u>Bynum v. Dist. of Columbia</u>, 214 F.R.D. 27, 41 (D.D.C. 2003) (granting motion to certify Overdetention Class); <u>Bynum v. District of Columbia</u>, 217 F.R.D. 43, 50 (D.D.C. 2003) (granting motion to certify Strip Search Class).

names and DOBs, case numbers and charges, and event dates and disposition).  Keith Godwin,

October 10, 2003, Vol. II, 284-285.  In fact, the DC Jail's R&D section use an intake's PDID to see

whether he has ever been issued a DCDC since the two identifiers are linked in the Jail database.

Godwin, 10/10/03, pages 183-184.  Other fields common to both databases include: name, DOB,

case number, offenses, sentence, disposition, disposition dates, hearing date, judge, bond status,

bond amount.  Plaintiffs' Exhibit 39 (table of fields common to both Superior Court database and

Jail database provided by District of Columbia).

Plaintiffs need the Superior Court database data to serve as a quality control device to cross

check the reliability of the data in Jail database.  Both the Shaw Report (Plaintiff's Exhibit 11) and

the Inspector[9] General's Report, pages 29 and 30.  (Plaintiff's Exhibit 25)  document severe

problems with the reliability of data entry into the JACCS/Jail database system.

The Jail database has fields to store the next upcoming court date of an inmate who has an

"open" charge (a charge he has not been sentenced on) but these fields were not used until recently.

Godwin deposition, October 6, 2003, page 84.  CRYSIS did not have a next court date field.

Godwin deposition, October 6, 2003, page 84.  The Superior Court  database can supply this

information.  Godwin deposition, October 6, 2003, page 88.  The Superior Court database data can

also help identify Strip Search Class members by generating a list of persons who went to court, and

who received a disposition entitling them to release on those charges.  Plaintiffs can then check

_____

[9] Report of Inspector General on Central Detention Facility, Report Number 02-00002FL, October
2002, "Inspector General's Report," Plaintiff's Exhibit 25; According to the Inspector General's
Report, a query of the Jail database system (the Department of Corrections' current computerized
inmate population accounting system) on October 25, 2001 indicated that 703 inmates at the DC
Jail were being overdetained on that date, a figure which amounts to 47% of the inmate population
for that day.  Inspector General's Report, pages 29-30, Plaintiff's Exhibit 25.

other data sources such as institutional jackets to fill in the gap when an inmate was actually released[10], and whether some justification for overdetentions, if any, exists (e.g., detainer, warrant, District Court case).

CRYSIS, CENSUS, and JALAN are prior databases the DC Jail used to sort, track and release inmates prior to introducing the Jail database in November 2000.  Data entry into CRYSIS was very unreliable and did not capture crucial information, for example, the fact of an inmate's release from custody of the DOC.  Godwin deposition, October 20, 2003, pages 58-59.  Therefore, for persons in DOC custody from the beginning of the class period until the introduction of the Jail database, plaintiffs need the Superior Court database data to plug these gaps in the pre-JACCS Jail database data.

Superior Court database data can also help plaintiffs compile an arrest and criminal conviction history for pre-JACCS Jail database inmates because the pre-JACCS Jail database did not capture this information.

Unduly broad.  Defendant's unduly broad objection is not explained.  To the extent that this objection is based on plaintiffs' failure to specifically identify fields by  name, the objection is invalid since it is defendant who is withholding the deponents necessary for field identification.

_____

[10] A person who is eligible for release because all of his Superior Court cases have been cleared may still be liable to detention on a detainer, warrant or District Court charge.  However, the Superior Court Superior Court database data can be used to generate a set of persons who are potentially subject to release, and then other sources – Jail database or institutional files – can then supply data on whether some other reason justified his release past the tentative release date.

17

VIII.   ***RECORDS OFFICE DISCREPANCY DATABASES***

The Department of Corrections maintains one or more "discrepancy" databases that record late releases (persons released after their court ordered release dates), erroneous releases (persons mistakenly released before their court ordered release dates), and other information (such as the existence of detainers).  Plaintiffs requested the discrepancy databases in document production request # 60:

60.   Produce every **WRITING** relating to the creation, operation, modification, installation, maintenance and use of the "release discrepancy database" mentioned on page 391 of the deposition of Steven Smith taken on March 6, 2003 and every **WRITING related** thereto including a data dictionary (as described above) which has been used or in effect at any time from May 14, 1999 up to the date of production in accordance with this request.

The District objected as follows:

The District objects to the Specification as unduly broad and not reasonably calculated to lead to the discovery of reasonable evidence.

Mr. Smith, head of the Records Office until some months ago, stated that the DOC maintains several Lotus Notes databases; the "other discrepancies," the "court discrepancies,"  and a database where Records Office legal instrument examiners log their activities.  Pages 384-386, March 6, 2002.

Despite the objection, in the June production the District produced certain e-mails relating to persons in the database because their releases were late.  In October 2003, the District produced the portion of a discrepancy database containing late releases (not early releases) in the database, but only current through March 2003.  Plaintiffs moved for production of this database in their first motion to compel.  Late releases are relevant under both Rule 23 and Rule 26 for compiling a class list.  Moreover, erroneous releases, as well as late releases, are relevant to prove elements of

plaintiffs' §1983 claim that the District's inmate management system collapsed, and that the District effectively acquiesced in the collapse.  The District did not respond to the portion of plaintiffs' motion addressing production of the discrepancy database in their opposition to plaintiffs' motion to compel, and so have conceded production of all data in the discrepancy databases.

Plaintiffs need data on both the overdetentions (late releases) and erroneous releases (releases before court ordered release dates) because both are relevant to emphasizing that the District's inmate population accounting system is ineffective.

Furthermore, the District has developed a methodology for analyzing erroneous releases (including both premature and late releases) that takes into account such factors as the population of the institution and the total number of releases to produce an "error rate" acceptable error rate that could be compared with the error rate of other jurisdictions.  Plaintiffs need all the data defendant is relying on in order to evaluate the system.

IX.     ***DISTRICT'S PROPOSAL TO PRODUCE JACCS DATA USING STATIC, ONE-TIME QUERIES EXECUTED BY DOC STAFF***

1.      ***Defendant's Proposal***

Defendant informed plaintiffs by e-mail dated 11/13/03 that it would produce certain data from the Jail database, but only if plaintiffs' expert submitted questions in writing, and only if plaintiffs' expert flew to Washington, D.C. to observe defendant's IT staff run certain SQL searches.

**2.      *Why Defendant's Proposal Is Objectionable***

Defendant's proposal that Professor Berk appear at DOC headquarters to pose certain queries that DOC staff would execute in lieu of producing the database records in ASCII format is merely an attempt to control the discovery process, limit data available to plaintiffs, and invade plaintiffs' work product-protected analysis of the data.  Requiring Professor Berk to submit his queries to DOC staff for execution serves no purpose other than to publish plaintiffs' strategies and privileged work product to defendant.  Defendant's proposal is specifically objectionable for  the following reasons:

1.      As a matter of law, plaintiffs are entitled to the raw data from both the Jail database and the Superior Court database without Professor Berk's having to travel all the way from California to make a personal appearance at defendant's offices to obtain the information;

2.      The District's method is under inclusive.  This Court certified the Overdetention Class as any one held past midnight of the date a court ordered his release.  Paragraph 2 of defendant's proposal offers to provide information only on persons " detained one day beyond projected or court ordered release date."  This Court certified a class of persons held past midnight of the date on which they were ordered released.  Bynum v. District of Columbia, 214 F.R.D. 27, 42 (D.D.C. 2003).  Therefore, the District's proposed list of class members omits class members held less than one day, but more than eight hours past his court ordered release;.

3.      The District's plan does not provide for production of the Superior Court database data in any form.  Plaintiffs' whole case is that defendant overdetained inmates because of an inadequate inmate management system and the Superior Court and Jail and discrepancy databases contain data from which plaintiffs can identify those inmates.  As a matter of law, plaintiffs are entitled to the raw data from both the Jail database and the Superior Court database, and not just the results of

SQL queries run by Department of Corrections personnel on the Jail database data.  Martin v.

PEPCO, 1990 U.S. Dist. LEXIS 11688;

4.        Requiring Professor Berk to travel to the District to obtain active, online data is

impermissible cost shifting under Rule 26(b)(2), Zubulake v. UBS Warburg LLC, 217 F.R.D. 309,

316 and 320.  The cost of downloading the records from selected fields in the format plaintiffs have

requested is minimal in time and money.  Defendant agreed to produce records from the Superior

Court database to plaintiffs in Johnson v. District of Columbia, 02-2364 (RMC), a class action

challenging the Marshals' and the District's practice of subjecting all women (but not men) brought

to the Superior Court for presentments to strip searches.  The District agreed to produce in Johnson,

"all records relating to women with cases pending in the District of Columbia Superior Court at

anytime during the period from five years before the date of  filing  the complaint in this case up to

the date of production from selected fields from Superior Court database and code documentation

and other documents produced in connection with the records ("Superior Court database material")

in computer readable format on a medium such as a tape or DVD."  Plaintiffs attach as an exhibit

hereto a copy of the confidentiality stipulation defendant and plaintiffs filed in that case covering

the Superior Court database.  Plaintiffs' Exhibit 40.

        Working with the data, and formulating and posing queries, is a dynamic, ongoing process.

Because of the problems with unreliable data entry into the Jail database, and the problems with the

CRYSIS data covering the period May 1999 to November 2000 when the Jail database came online,

Professor Berk  will be required to make numerous queries of the combined databases in order to

identify the class members and lengths of overdetention.  Simply asking DOC staff to run queries

on one occasion destroys plaintiffs' ability to work with the data on an ongoing basis.  The

District's method requires plaintiffs to run all their queries through the District's IT staff.  However,

plaintiffs' queries, and second and third rounds of queries, are privileged work product.  Therefore, defendant's proposed method violates the rule of <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947) and Rule 26(b)(3) because it invades plaintiffs' privilege.

5.      The District states that "Department of Corrections' (DOC) electronic records will not support queries referenced in this case from May 14, 1999 to judgment in the case.  DOC electronic records will support those queries from November 13, 2000."  First, Professor Berk believes  the data migrated into the Jail database  can be used to identify class members, length of detention, a sample, and criminal histories.  Moreover, the Superior Court database data  supplements the gap which defendant says is in the Jail database data  from May 14, 1999 to November 13, 2000. Plaintiffs are entitled to an opportunity to work with the data.  Previous representations by defense counsel to this Court regarding the feasibility of plaintiffs' proposal to use database discovery have been contradicted by defendant's own IT personnel.  For example, opposing counsel stated on page 5 of its opposition to plaintiffs' second motion to certify the strip class that both of its IT experts would submit affidavits stating that plaintiffs' plan to use the data was unworkable.  Neither person ever submitted an affidavit.

## X.      *CONFIDENTIALITY ISSUES*

This Court raised the issue of confidentiality in its opinion granting plaintiffs' motion to certify the Overdetention Claim and directed the parties to address privacy concerns in requesting electronic data about inmates.  <u>Bynum v. District of Columbia</u>, 214 F.R.D. 27, 37 n.3 (D.D.C. 2003).

Plaintiffs have previously proposed entering into a confidentiality stipulation.  <u>Martin v. PEPCO</u>, 1990 U.S. Dist. LEXIS 11688 (D.D.C. 1990) (confidentiality stipulation will adequately

address privacy concerns associated with production of a database).  Defendant has not responded

to this proposal.  Plaintiffs have also confirmed with defendant's IT deponents that plaintiffs can

conduct their analysis of the database fields without need for disclosure of the name fields by using

unique identifiers such as the DCDC number in the Jail database,  the PDID number in  the Superior

Court database, and the date of birth.  Therefore, plaintiffs are not requesting name fields or social

security fields at this point in order to preserve privacy, and to avoid the possibility that some

information on non-class members may be provided to plaintiffs.  Plaintiffs will request these name

and social security number fields only when class members have been first identified by unique

identification numbers, or as needed in a second analysis to identify class members for notice

purposes, for example.

Mr. Foor testified that plaintiffs' plan to obtain the database by unique identifier such as

PDID or DCDC is workable.  Foor deposition, pages 95-97.  Mr. Foor did say a small number of

persons in  the Superior Court database do not have a PDID so plaintiffs would have to obtain that

subset through some other means such as by name, social security number or birth date.  Foor

deposition, pages 96-98.  Plaintiffs submit that another way to solve the problem would be for the

Superior Court to add a unique identifier, such as a "virtual" PDID into the PDID field.

Moreover, the concerns over privacy as to the Superior Court database records are moderate

because Mr. Cipullo  testified that the Superior Court database data is public record data available to

any member of the public who requests it from the criminal clerk's office.  Mr. Cipullo further

testified that the criminal clerk's office makes available two Superior Court database terminals in

the clerk's office for use by members of the general public to access information in the Superior

Court database.  Terminals are also available for use in the lawyers' lounge of the District of

Columbia Superior Court courthouse. Terminal emulators which can access data in the Superior

Court database are widely used by members of the bar, particularly the criminal defense bar.

Public access to the data in the Jail database is more narrowly restricted, but plaintiffs note that the District of Columbia PDS has read only access to all Jail database information.

Defendant agreed to produce the Superior Court database[11] to plaintiffs in Johnson v. District of Columbia, 02-2364 (RMC), a class action challenging the Marshals' and the District's practice of subjecting all women (but not men) brought to the Superior Court for presentments to strip searches. Plaintiffs attach as Plaintiffs' Exhibit 40 hereto a copy of the confidentiality stipulation defendant and plaintiffs entered into in that case covering the Superior Court database. Plaintiffs' counsel in this case represent the Johnson plaintiffs. Ms. Amato represents the District of Columbia in Johnson. Plaintiffs have offered to execute this or a similar confidentiality stipulation in this case.

XI.    *SANCTIONS*

Plaintiffs did not seek money or evidentiary sanctions in their first motion. However, because defendant has refused to produce data for a substantial period of time without any justification, and because defendant has caused plaintiffs' counsel to spend considerable time and money (e.g. obtaining expert affidavits and taking depositions to learn the bases of defendant's objections to plaintiffs document production requests) to obtain the data and to identify defendant's objections, plaintiffs move this Court to compel defendant to produce the data forthwith, and to pay

---

[11] The District agreed to produce in Johnson, "all records relating to women with cases pending in the District of Columbia Superior Court at anytime during the period from five years before the date of  filing  the complaint in this case up to the date of production from selected fields from Superior Court database and code documentation and other documents produced in connection with the records ("Superior Court database material") in computer readable format on a medium such as a tape or DVD."

24

for plaintiffs' counsels' (and legal staff and expert's) time in preparing, filing and prosecuting this motion, plus all the time plaintiffs' counsel has spent attempting through conferences, e-mails, phone calls, depositions, and other methods to obtain the data, and to identify and address defendant's objections that were not set forth in defendant's objections to plaintiffs' requests.

Listed below are examples of defendant's **intentional** delay in the case:

1.      Defendant never filed an opposition (**even after eight months**) to plaintiffs' motion to certify the Strip Search Claim component of plaintiffs' first motion to certify, <u>Bynum v. District of Columbia</u>, 214 F.R.D. 27, 30 (D.D.C. 2003) (Court decided motion without defendant's opposition);

2.      Defendant delayed before responding to plaintiffs' second motion to certify Strip Search Class;

3.      Defendant still has not proposed either a notice to the class, or a trial plan, or submitted drafts to plaintiffs for review, after promising to do so in defendant's opposition to plaintiffs' **first** motion to compel database discovery.  On August 28, 2003 plaintiff's counsel William Claiborne sent an e-mail to both Robert Utiger and Maria Amato asking them if defendant wished to discuss filing notice jointly.  Neither one ever replied.  Plaintiffs filed the proposed class notice on September 8, 2003 (docket # 100).  Plaintiffs filed a proposed trial plan on September 8, 2003 (docket # 98).  Counsel for defendant stated on page 5 of defendant's opposition to plaintiffs' first motion to compel filed October 10, 2003 (docket # 101) that defendant would either file notice jointly with plaintiffs, or file separately.  Opposing counsel Maria Amato made the filing of such a proposed notice or trial plan the centerpiece of her rebuttal of plaintiffs' claim that she was intentionally delaying the case.  Defendant's opposition to plaintiffs' first motion to compel, page 5 (docket # 102).  Ms. Amato's failure to file a submission on the proposed notice or trial plan proves

the falsity of her previous statements;

4.      Defendant has consistently provided inaccurate data to plaintiffs and the Court that obstructs the discovery process.  Defendant stated in its opposition to plaintiffs' second motion to certify the strip class that both of its IT experts would submit affidavits stating that plaintiffs' plan to use the data was unworkable.  (docket # 96), filed August 11, 2003.  But, defendant never filed any such affidavits and in fact, both of defendant's IT experts later testified in their depositions that the fields in the Superior Court and Jail databases could generate the lists.  Moreover, Veronica Porter told plaintiffs' counsel by letter dated December 15, 2003 that there have been only five late releases from March 2003 to December 15, 2003.  Plaintiffs' Exhibit 42.  However, information collected informally by plaintiffs shows 23 late releases during the period between March 2003 and December 15, 2003 ranging from 50 days to 1 day.  Plaintiffs' Exhibit 43.  Finally, Dr. James Austin, a professor of criminology at George Washington University, produced a report on the Records Office in 1998, but the District not only failed to produce the report in response to a discovery request, but also failed to list it in a privilege log, thereby intentionally hiding its existence from plaintiffs and depriving plaintiffs of a chance to file a notion to test the defendant's basis for non-production (plaintiffs' found out about the report by checking the papers filed in a similar case pending in this Court);

5.      The District's general practice of delay and disregard for discovery obligations is well known to bench and bar;

6.      Defendant's objections fail to explain how each of its objections applied to the request at issue, did not identify specific documents which it refused to produce and the grounds for such refusal, and did not otherwise provide information which would allow plaintiff or the court to evaluate the District's objections in a meaningful way, <u>Martin v. Potomac Elec. Power Co.</u>, 1989 U.S. Dist. LEXIS 15407 n. 14;

7.      Lack of specificity in District's objections support the conclusion that the District submitted

its objections merely for the purpose of delay.  Buttressing this conclusion is an e-mail (dated

September 24, 2003) from opposing counsel in which she threatened "war" if plaintiffs did not

withdraw their original motion to compel database discovery.  E-mail from Maria Amato dated

September 24, 2003;

8.      Defendant is intentionally delaying production of the Superior Court and Jail databases by

raising the bar every time plaintiffs agree to their conditions for production.  Defendant originally

refused to tell plaintiffs the names of the selected fields in the Superior Court and Jail databases

containing the data plaintiff needed, and so defendant raised "overbroad" objections to plaintiffs'

requests.  Then, after plaintiffs had taken depositions to narrow the fields plaintiffs were requesting,

defendant stopped producing deponents, thereby blocking plaintiffs from more narrowly specifying

the fields they needed.  On page 2 of defendant's opposition to plaintiffs' original motion to compel

defendant stated it was willing to provide extracts from the Jail database inmate data from:

Demographics, Charges, Bonds, Detainers, Transfer History, and Sentencing.  Presumably, the

fields in the tables listed by plaintiffs correspond very closely to the fields/tables to which plaintiffs

had previously limited their requests.  However, defendant never produced that data.  Instead,

Veronica Porter by e-mail dated 11/13/03 added a new condition, not stated by Maria Amato in her

opposition to plaintiffs' motion, that conditioned production of the data on plaintiffs' expert

appearing in person to collect the records and making his computer analysis of the data through

defendant's employees.

9.      Plaintiffs' counsel William Claiborne has called Ms. Amato once a week since Christmas on

the issues in this motion and she has been to busy to talk about the issues until February 9, 2004,

when she said her colleague Veronica Porter was handling discovery issues in the case.  Ms. Porter,

who entered an appearance on November 21, 2003 (docket # 104), stated in a phone conference

February 9, 2004 that her only responsibility in the case was to schedule depositions.  On February 9, 2004 Plaintiffs' counsel sent an e-mail to both Ms. Amato and Ms. Porter asking who was the contact person on discovery in the Bynum case but neither one responded. This tactic amounts to sanctionable conduct as intentional delay.

Plaintiffs need monetary sanctions in this case to level the playing field between plaintiffs and defendant.  Defendant disregards the discovery rules, disregards the Rule 11 limits on factual assertions in court pleadings, and operates beyond the pale of the rules of procedure.  Therefore, plaintiffs move this Court pursuant to FRCP 37(a)(4)(A) to impose the following sanctions on defendant because defendant's responses, objections and refusal to produce discovery were not substantially justified, and were part of a litigating strategy of intentional delay:

➢ Order defendant to pay all attorneys' fees (including legal staff fees and expert fees) incurred since the commencement of the case in attempting to obtain production of the database discovery including e-mails, phone calls, depositions and motions;

➢ Cost of all depositions that have been taken, and that will be taken, to ascertain fields plaintiffs needs for discovery and all related depositions; and

➢ Order a supervisor in the Corporation Counsel's office to explain under oath defendant's reasons for non-production of the database discovery.

Moreover, plaintiffs move this Court to warn defendant that future discovery misconduct may result in evidentiary sanctions, including exclusion of evidence, exclusion of defenses, and adverse inferences.

XII.   ***REFERRAL TO MAGISTRATE***

Because other discovery issues besides production of the selected fields still remain (e.g. production of the persons most knowledgeable on plaintiffs' 30(b)(6) deposition notices), plaintiffs move this Court (in addition to entering plaintiffs' proposed order) to refer this case to Magistrate Judge John Facciola for resolution of the other outstanding discovery issues.  Judge Richard Roberts recently referred a similar motion to compel database discovery in District of Columbia databases to Magistrate Judge Facciola in <u>McDowell v. District of Columbia</u>, 02-1110 (RR/JMF) (order attached to plaintiffs' first motion to compel discovery).  Judicial economy would be served by referring this same issue to the same Magistrate Judge.

WHEREFORE, Plaintiff respectfully moves this Court to grant Plaintiffs' motion and to sanction defendant.

| Respectfully submitted, | Respectfully submitted, |
|---|---|
| _____<br>WILLIAM CLAIBORNE<br>D.C. Bar # 446579<br>Counsel for the Named Plaintiffs and the Classes<br>717 D Street, NW , Suite 210<br>Washington, DC 20004<br>Phone 202/824-0700<br>Fax 202/824-0745<br>Certification that movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.  Plaintiffs' counsel William Claiborne has called Ms. Amato once a week since Christmas on the issues in this motion and she has been to busy to talk about the issues | _____<br>LYNN CUNNINGHAM<br>D.C. Bar # 221598<br>Counsel for Plaintiffs and the Classes<br>Professor of Clinical Law<br>The George Washington University Law School<br>2000 G Street, N.W.<br>Washington, D.C. 20052<br>Phone: (202)994-7659<br>Fax: (202)994-4693 |

until February 9, 2004, when she said her colleague Veronica Porter was handling discovery issues in the case.  Ms. Porter, who entered an appearance on November 21, 2003 (docket # 104), stated in a phone conference February 9, 2004 that her only responsibility in the case was to schedule depositions.  On February 9, 2004 Plaintiffs' counsel William Claiborne sent an e-mail to both Ms. Amato and Ms. Porter asking who was the contact person on discovery in the Bynum case but neither one responded.  Ms. Porter confirmed defendant's refusal to produce either the Jail or Superior Court database on February 9, 2004.

_____

WILLIAM CLAIBORNE

| Respectfully submitted | Respectfully submitted, |
|---|---|
| _____ | _____ |
| Barrett S. Litt, Esq. | Paul J. Estuar, Esq. |
| pro haec vice | pro haec vice |
| 3435 Wilshire Boulevard, Suite 1100 | 3435 Wilshire Boulevard, Suite 1100. |
| Los Angeles, CA 90010 | Los Angeles, CA 90010 |
| Phone (213)-386-3114 | Phone (213)-386-3114 |
| Fax (213)-380-4585 | Fax (213)-380-4585 |