# PUBLIC DEFENDER SERVICE
### FOR THE DISTRICT OF COLUMBIA

BOARD OF TRUSTEES

CYNTHIA D. ROBBINS
  CHAIRPERSON
JOHN PAYTON
  VICE CHAIRPERSON
EMILIO W. CIVIDANES
CLAIRE M. JOHNSON
HANNAH JOPLING
LYDIA S. LIVELY
KARL A. RACINE
JEFFREY D. ROBINSON
ROBERT WILKINS

633 INDIANA AVENUE. N.W.
WASHINGTON, D.C. 20004

(202) 628-1200
(800) 341-2582

FAX  (202) 824-2784

www.pdsdc.org

RONALD S. SULLIVAN JR.
DIRECTOR

AVIS E. BUCHANAN
DEPUTY DIRECTOR

October 23, 2003

Hon. Rufus King III
Chief Judge, Superior Court of the District of Columbia
500 Indiana Ave, N.W.
Room 3500
Washington, D.C. 20001

Todd Dillard
United States Marshal for the Superior Court of the District of Columbia
500 Indiana Ave, N.W.
Room C250
Washington, D.C. 20001

Odie Washington
Director, District of Columbia Department of Corrections
1923 Vermont Ave., N.W.
Washington, D.C. 20001

Dear Chief Judge King, Mr. Dillard and Mr. Washington:

    I write to alert you to a very serious problem currently affecting criminal defendants whose cases are successfully resolved, either by dismissal or by acquittal, in the D.C. Superior Court.  In recent months, we have learned that such persons are regularly denied timely release, spending hours and sometimes days in the District's custody after all legal bases for their detention have evaporated and contrary to the express orders of the Court's own judicial officers.  Instead, these presumptively free citizens are subjected to unlawful seizures, unlawful searches and deprivation of their liberty without due process of law.  In our view, this practice is completely unacceptable, patently unconstitutional and exposes the District of Columbia to substantial civil liability.

    The law on this issue is clear.  Post-dismissal and post-acquittal detentions are seizures requiring constitutional justification.  Courts across the country have determined that situations where legally

1

released individuals are denied actual physical freedom "are almost indistinguishable from an actual formal arrest" and that such individuals are essentially "re-seized" for the purposes of constitutional analysis.  Jones v. Cochran, 1994 U.S. Dist. LEXIS 20625, *16 (S.D. Fla. 1994).  In the absence of probable cause or legitimate exigency, then, these detentions violate the Fourth Amendment.  Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001); Lewis v. O'Grady, 853 F.2d 1366, 1372 (7th Cir. 1988); Fowler v. Block, 2 F.Supp. 2d 1268, 1279 (C. D. Cal. 1998); Vanke v. Block, 1998 U.S. Dist. LEXIS 23488 *53-54 (C.D. Calif. 1998); Jones v. Cochran, 1994 U.S. Dist. LEXIS at *17.

It has been suggested to our office that continued detention of legally free individuals is justified by a desire to explore the possibility of outstanding warrants or detainers.[1]  The courts do not agree.  It has in fact been expressly held that the random possibility of a pending active warrant does *not* provide sufficient basis for seizures of constitutional caliber.  Indeed, courts have found that "[t]he possibility that another warrant … [is] in existence" does not constitute even "particularized suspicion," let alone probable cause.  Jones v. Cochran, 1994 U.S. Dist. LEXIS at *15.  Accordingly, mere "speculation that a want or hold may appear, absent any particularized reason to expect its appearance for a given individual, does not provide a lawful basis to detain that individual under the Fourth Amendment." Vanke v. Block, 1998 U.S. Dist. Lexis 23488 at *4 (C.D. Calif. 1998).  In addition, unjustifiable overdetention constitutes a Due Process Clause violation.   Court after court has accordingly held that excessive delay in the processing of legally free individuals can give rise to unconstitutional – and actionable – deprivations of liberty.  See, e.g.,  Young v. City of Little Rock, 249 F.3d  at 736; Fowler v. Block, 2 F.Supp. 2d at 1279; Jones v. Cochran, 1994 U.S. Dist. LEXIS at *18.  Finally, "the elements of a constitutional claim for false arrest are substantially identical to the elements of a common law false arrest claim," Scott v. District of Columbia, 101 F.3d 748, 753 (D.C. Cir. 1996), as "the gravamen of a suit for false arrest or false imprisonment is an unlawful detention." Gabrou v. May Department Stores Company, 462 A.2d 1102, 1104 (D.C. 1982).  Current overdetention practices therefore also expose the District to significant civil tort liability.[2]

The Public Defender Service is aware that a class-action lawsuit addressing these very issues, Bynum v. D.C., CA No. 02-956,  is currently pending in U.S. District before the Hon. R. Lamberth.  The parties' exposure from this litigation may well be substantial given that, as one court has recently

---

[1] It has also been suggested that such detentions are permissible under the dictates of Riverside v. McLaughin, 500 U.S. 44 (1991).  Riverside, however, authorizes only limited additional detention in the wake of a presumptively lawful arrest and pending a legal determination of probable cause.  Riverside therefore provides no authority for the incarceration of individuals that have been neither legally arrested nor detained for the purpose of a probable cause determination.

[2] Interestingly, D.C. Code § 24-201.06 provides that an individual who is serving a sentence is entitled to release *on the day* his or her sentence expires.  Many of our recently acquitted clients, however, have not been released until the day *after* their cases have terminated.  Surely, a person whose term of incarceration has ended by virtue of his legal vindication is entitled to, at the very least, the same timely release protections afforded those who have been actually convicted of a crime.

observed, damage awards may

properly compensate both for the actual period of unlawful detention and for "physical and emotional injuries … suffer[ed] after … release." County of Los Angeles v. Superior Court, 92 Cal. Rptr. 2d 668, 675 (Cal. App. 2000).   No one would willingly spend even a single day in jail; reasonable jurors will likely and rightly impose significant damage awards in favor of individuals forced to do so unlawfully.  We represent many such individuals and have begun tracking instances illegal overdetention for potential referral to Bynum class counsel.

     We therefore propose that you consider immediate implementation of a policy that will remedy a chronic and grievous problem as well as limit the District's significant and expanding liability in this area.[3]  We propose specifically that 'warrant checks' be conducted by the Department of Corrections in advance for all inmates with potentially dispositive court dates.  Alternatively, we would be willing to work with the Marshals Service to develop mechanisms for conducting these checks from the courthouse during or immediately following relevant court proceedings.[4]  The technology to support in-house warrant checks at Superior Court already exists and is used every day by the Deputy United States Marshals who process releasees in both C-10 and J-10.  Other options for streamlining the release process include sending potential releasees to court with a change of civilian clothing or, better yet, allowing releasees the option of returning to collect their belongings from the D.C. Jail or the Correctional Treatment Facility but not requiring that they be detained for this purpose.[5]

---

[3] Implementation of a policy to remedy this problem can only inure to the District's benefit, protecting the District's interests without increasing its exposure to liability for past violations.  As you are no doubt aware, neither discussion nor implementation of any remedy can be construed as an admission of any kind with respect to any pending or future litigation.   Federal Rule of Evidence 407; Ray v. American National Red Cross, 696 A.2d 399, 408 (D.C. 1996).

[4] More than one court has endorsed similar practices designed to eliminate "administrative foot dragging," Young v. City of Little Rock, 249 F.3d at 736, and to cure otherwise illegal overdetention.  The Southern District of Florida, for example, has noted that "a check to determine whether any holds are in existence in a particular case can be accomplished in advance of verdict and need not take more than fifteen minutes." Jones v. Cochran, 1994 U.S. Dist. LEXIS at *16.  The Central District of California has similarly observed that "it is usually no surprise to the courtroom deputies, or those responsible for a criminal defendant's custody between the courtroom and the holding cell, that a verdict is about to come down, that the court is considering some motion to dismiss or that a deal has been reached…[Warrant] checks can [therefore] occur at anytime between the original arrest and the case's ultimate disposition" Fowler v. Block, 2 F.Supp. 2d  at 1279.

[5] See e.g. Lewis v. O'Grady, 853 F.2d at 1368, n.7; Young v. City of Little Rock, 249 F.3d at 736 (noting that releasees ought to have the option of foregoing certain housekeeping aspects of institutional discharge – such as the provision of civilian clothing and the immediate restoration of the inmate's personal property – in order to expedite their release).

3

Thank you very much for your immediate attention to this very important issue. I look forward to hearing from you soon.

          Very Truly Yours,

          Ronald S. Sullivan Jr.
          Director, Public Defender Service for the District of Columbia

cc:    Hon. Noel A. Kramer
       Presiding Judge, Criminal Division, Superior Court of the District of Columbia
       500 Indiana Ave, N.W.
       Room 3520
       Washington, D.C. 20001

       Hon. Harold Cushenberry
       Deputy Presiding Judge, Criminal Division, Superior Court of the District of Columbia
       500 Indiana Ave, N.W.
       Room 5610
       Washington, D.C. 20001

       William Claiborne, Esq.
       Plaintiff Class Counsel, <u>Bynum v. D.C.</u>
       717 D. Street, N.W. Suite 210
       Washington, D.C. 20004

4