UNITED STATES DISTRICT COURT
OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARCUS BYNUM, ET AL | CIVIL ACTION NO. 02-956 (RCL) |
| PLAINTIFFS | NEXT EVENT: |
| V. | STATUS CONFERENCE JUNE 27, 2005 |
| GOVERNMENT OF THE DISTRICT | |
| OF COLUMBIA, | |
| DEFENDANT | |

SETTLEMENT AGREEMENT

This is a class action arising under § 1983 of the Civil Rights Act of 1871,

42 U.S.C. § 1983. Plaintiffs seek monetary damages and injunctive relief for

defendant's alleged violations of the fourth, fifth and eight amendments to the U.S.

Constitution. The plaintiffs are prisoners of the D.C. Department of Corrections

alleging that the District of Columbia (hereafter also "District" or "D.C.") has a

pattern, practice and policy of subjecting inmates to over-detention and subjecting

in-custody defendants ordered released at their court appearances to strip searches

upon their return to the D.C. Jail for processing of records and property before

release. The named plaintiffs are Marcus Bynum, Kim Nabinette, Leroy S.

Thomas, Dianne Johnson, Gloria Scarborough, and Julian Ford.

The Over-Detention Injunctive Relief Class is defined as:

(a) Each person who has been, is or will be incarcerated in any District of

Columbia Department of Corrections facility beginning in the three years

preceding the filing of this action on or about May 16, 2002 up to and until August

31, 2005; and (b) who was not released, or, in the future will not be released by

midnight on the date on which the person is entitled to be released by court order

or the date on which the basis for his or her detention has otherwise expired.

The Over-Detention Monetary Relief Class is defined the same as above

except that it ends on August 31, 2005.

The Strip Search Injunctive Relief Class is defined as:

Each person who, beginning in the three years, preceding the filing of this action,

up until the date this case is terminated, has been, is or will be (i) in the custody of

the Department of Corrections; (ii) taken to Court from a Department of

Corrections facility; (iii) ordered released by the court or otherwise became entitled

to release by virtue of the court appearance because the charge on which he had

been held was no longer pending or was dismissed at the hearing, was ordered

released on his own recognizance, or had posted bail, was sentenced to time

served, was acquitted or was otherwise entitled to release; (iv) was returned to the

DC Jail or CTF from court, to be processed out of Department of Corrections

custody; and (vii) was subjected to a strip search and/or visual body cavity search

without any individualized finding of reasonable or probable cause that he was

concealing contraband or weapons; before being released, regardless of whether he was over-detained.

The Strip Search Monetary Relief Class is defined the same as above except that it ends on August 31, 2005.

In the interest of avoiding expense, delay and inconvenience of further litigation of issues raised in this action, in the absence of any admission of liability by defendant, and in reliance upon the representations contained herein, and in consideration of the mutual promises, covenants and obligations in this Agreement, and for good and valuable consideration, plaintiffs and defendant, through their undersigned counsel, agree and stipulate as follows:

I.       Definitions and General Provisions

A.    Definitions

1.    "Class Administrator" - A firm to be chosen by agreement of the parties, or appointment of the court if the parties cannot agree, to administer the claims process. Any firm so chosen must specialize in such work.

2.    "Plaintiff class" or "Class Member(s)" - All Class Members

3.    "Named plaintiffs" or "Class Representatives" - The original named plaintiffs in the Amended Complaint to this suit:

4.      "Claimant(s)" - Class members who actually file claims pursuant to the procedures set forth in this Agreement.

5.      "Class Fund or Class Settlement" - Lump sum payment to be paid by the defendant, totaling $12,000,000, which will be paid and/or distributed and allocated as further described in this Agreement.

6.      **"Class Fund Attorneys' Fees"** - That portion of the Class Fund awarded as attorney's fees and costs to Class Counsel. Litigation costs and the costs of class notice and administration shall constitute a separate cost and will be paid separately from the attorney's fees.  The amount of these fees, which will be determined by the Court, will be paid from the portion of the Settlement Fund that is to be distributed to class members (as opposed to the reversion fund).

7.      "Defendant" - The District of Columbia

8.      "Department" - The D.C. Department of Corrections.

9.      "Fairness Hearing" - The final hearing on the fairness of this Settlement in the District Court, at which the Court will determine whether to approve it.

**10.**   Named Plaintiffs' Distribution" - The amount of the Class Fund to be distributed to the Named Plaintiffs.

11.   "Plaintiffs" - As the term "Plaintiffs" is used in this document and Exhibit B (the Preliminary Approval Order), it refers to all class members. In Exhibit D (the Final Approval Order), it refers to all class members who have not opted out.

12.   "Preliminary District Court approval" - The date, following submission of this Settlement Agreement to the Court by the parties but prior to the conduct of a Fairness Hearing, on which the Court grants initial approval of the Settlement Agreement.

13.   "Final District Court approval" - The date, following submission of this Settlement Agreement to the Court by the parties, and after conduct of a Fairness Hearing, on which the District Court grants final approval of the Settlement Agreement.

14.   "Plaintiffs' counsel," "Counsel for plaintiffs," or "Class Counsel" - The counsel of record for the plaintiff class. They are William Claiborne, Lynn Cunningham and Barrett Litt, Attorneys at Law.

15.    "Counsel for the parties" - Counsel for plaintiffs and counsel

for the defendant.

B.    <u>General Provisions</u>

1.    This Settlement Agreement is not an order of the Court, but a

contract, and all of its provisions are enforceable by the parties under

contract law.

2.    This is a hybrid class action, certified under Fed. R. Civ. P. 23(b)(2)

with regard to seeking injunctive relief on over-detention and strip

searches of inmates under the definition of the strip search class set

forth, supra. Therefore, regarding prospective injunctive relief, no

member of the class may opt-out. With regards to monetary relief, the

class is certified under Fed. R. Civ. P. 23(b)(3) and class members

have a right to opt out of the monetary relief stage. The parties agree

that the monetary relief shall compensate for all alleged violations of

rights and all claims and any other incidents of incarceration by the

plaintiff class members that were or could have been brought in this

civil action under any theory of liability for any claims related to

allegedly unlawful over-detentions and strip searches, except as to

monetary damages for those class members who choose to opt out.

3.      This Settlement Agreement comprises the full and exclusive agreement of the parties with respect to the matters discussed herein. This agreement incorporates and supersedes any other agreements. No representations or inducements to compromise this action have been made, other than those recited in this Agreement.

II.     Class-wide Prospective Relief

A.      <u>Strip Search Class</u>

1.      The plaintiffs' claims for prospective relief regarding the strip search class will be resolved by the D.C. Department of Corrections' plan to divert inmates ordered released or otherwise entitled to release from the Superior Court of the District of Columbia to a secure location outside of the open population of the D.C. Jail or another location where they will not be subject to a strip search, absent individualized suspicion, while the record review for detainers and warrants and property retrieval are conducted prior to release. This process shall be implemented on or before August 31, 2005. The Monetary Relief Strip Search Class will extend through that date.

2.      The parties will defer the initiation of class notice until after August 31, 2005.

3.      If the District has not accomplished the change in the strip search procedure by August 31, 2005, then any persons strip searched after that time will have a new claim for that subsequent search, which is not covered by this settlement.

4.      In addition, in the scenario set forth in paragraph 3 immediately above, the Strip Search Injunctive Relief Class and class counsel will be free at that point to pursue additional litigation in this case to enjoin the District's continuing Strip Search policy, and the District will be free to oppose it. Any fees awarded to the class as prevailing parties for such litigation shall be separate from the Class Fund Attorney's Fees.

5.      The parties note that the court has previously entered orders certifying both an Over-detention and Strip Search class; that no material modifications have been made to that definition; that the court has made the findings necessary to support the certification and no further findings are necessary in this regard; and that the Class Counsel listed above were appointed at that time as counsel for the class.

B.      <u>Successors</u>

The terms of the Agreement shall each be binding on the Plaintiffs and the District of Columbia, and their successors and assigns, subject to the modification clause set forth in Section C, below.

C.      <u>Modification as a Result of Changes in Applicable Law</u>

The parties recognize that, following execution of this Agreement, there may be changes in controlling law that warrant modification. The Settlement Agreement shall be subject to modification by the Court upon the application of either party based on changes in applicable state or federal law after August 31, 2005, as it relates to injunctive relief. No modification shall apply as it relates to monetary relief.

III.   Class-wide Monetary Relief

A.      <u>Monetary Payments</u>

1. Within 45 days of the Final District Court approval of this settlement, the District will pay the sum of $12 million ("the Settlement Funds"), less the costs advanced by the District for preparation and publication of the Class Notice and related

administrative expenses, which amount shall be deemed to be in exchange for a full and final release of all claims to be contained in the Final Order of Approval of Settlement. The payment will be such that the funds will be deposited and cleared through the appropriate accounts within that 45-day period. How the funds will be used and allocated is addressed in ¶¶ III (A)(3-6) below.

2.   If no appeal or a petition for writ of certiorari to the Supreme Court of the United States has been filed, then the settlement funds will be paid on the timetable set forth in the preceding paragraph. If an appeal or a petition for writ of certiorari to the Supreme Court of the United States has been filed, then the District shall distribute the Settlement Funds in accordance with the provisions of ¶¶ III (A)(3-6) below within 30 days of the date that all appellate avenues of review have been exhausted, including Supreme Court review, if the settlement is ultimately approved. If the result of the appeal or Supreme Court review is that the settlement is not ultimately approved, then the case shall revert to active litigation, and the District shall have no responsibility to pay any Settlement

Funds not previously paid for the costs of class notice and related administrative expenses.

3. The parties agree that $3 million of the $12 million payment referenced above will revert to the D.C. Department of Corrections to be spent on programs and services which relate to the subject of this complaint (hereafter "reversion fund"). These funds may be spent on new staff, services, construction, technology, equipment, programs or other activities otherwise necessary to improve or assist in processing inmates for release of inmates and to reduce incidents of over-detention and the need to strip search, without individualized suspicion, inmates who meet the definition of the strip search class. It is understood that the reversion fund exists to fund the injunctive relief changes necessary to eliminate the over-detentions and strips searches that are the subject of this lawsuit and will be for new programs or activities not previously budgeted (and specifically not as a part of the general budget). The mediators in the case will work with the parties to identify specifically how and when the reversionary amount will be spent. If, by August 31, 2005, the parties have

been unable to agree specifically how all of these funds will

be spent, either side may submit its proposals to the Court,

which will then decide how to spend any amount not

otherwise agreed to based on the criteria set forth above. This

decision will be binding and may not be appealed by either

side.

4. The parties agree that the injunctive relief objective of this

agreement is the elimination of over-detentions and court

release strip searches. To that end, the District will, for a

period of two years, provide to Class Counsel annually a

report on whether 1) it has strip searched any court returns

entitled to release absent individualized reasonable suspicion

to do so, and whether 2) it has released any detainees or

inmates more than 24 hours after the time they become

entitled to release, and the reasons therefore.

5  The parties agree that the settlement amount shall include all

attorneys' fees and costs. Plaintiffs intend to submit a petition

for attorneys' fees and costs to the Court for the sum of $4

million dollars. Defendant takes no position regarding the

Plaintiffs' petition for attorneys' fees and costs. If the Court

awards less than $4 million for the plaintiffs' attorneys' fees

costs, the remainder of the $4 million shall revert to the

District of Columbia on programs and services that relate to

the subject of this complaint, and shall be subject to the same

terms as are set forth in ¶ III(A)(3) above.

6. The parties agree that $5 million dollars of the settlement

amount shall be used for the compensation of the plaintiffs

and for the administration and distribution of the monetary

compensation fund, including the claims verification

procedure. The plaintiffs will develop a plan of distribution to

address all of the plaintiffs' claims and that plan shall be

submitted to the Court for approval. The claims procedure

shall include a verification process to ensure that claimants

are members of one or both classes, and the length of the

claimants' over-detention. The Claims Administrator and

Class Counsel will distribute this money according to the

terms of the Final Order of Approval of Settlement. Plaintiffs

shall use their best efforts to insure that distribution of the

settlement amount will occur in such a way so that no residual

amount (of the $5 million compensation fund) will remain

following final distribution. However, if some residual

happens to remain after reasonable efforts to distribute funds

to class members who have filed claims have been exhausted,

the residual amount will revert to the reversion fund defined

in ¶ III(A)(3) above.

IV. Procedures for Approval of the Final Settlement Agreement

    A.    <u>Application for Preliminary Approval</u>

The parties will apply for Preliminary Approval of the Settlement

Agreement by June 16, 2005. At that time, the proposed Order of

Final Approval of Settlement will be presented to the court. A hearing

will be held within 30 days thereafter, at which time the court will

make a preliminary determination that the settlement appears fair,

adequate and just; determine whether it will approve the class notice;

and set a date for the Fairness Hearing and any other dates that need to

be determined.

    B.    <u>Notice to Potential Claimants</u>

1. Application for Preliminary District Court approval shall occur as

soon as is practicable. However, since the definition of the

Monetary Relief classes (both Over-detention and Strip Search)

extends through August 31, 2005, notice will be sent as soon as

practicable after that date. At that time, a copy of the Notice (set forth in Exhibit C) and the Claim Form (set forth in Exhibit D) shall be distributed to every person identified as a class member.

2.  Plaintiffs will distribute the Notice and Claim Form by first class mail to the last known address of each class member.

3.  The District will pay to the Class Administrator the costs of preparing and publishing the Class Notice and other expenses related to the publication and distribution of notice to the class. The Class Administrator shall provide an estimate of the costs of notice no later than July 20, 2005, and the necessary funds shall be paid to the Class Administrator no later than August 8, 2005, and supplemented in the event the Class Administrator provides a supplemental estimate. Any such payments shall be credited against the $12 Million Class Settlement. However, if for any reason this settlement is not ultimately approved, the District shall have no claim against Plaintiffs, the Class or Class Counsel for reimbursement of the costs of notice and related costs for which it advanced funds, except to be credited in any subsequent settlement of this case.

4.   A modified and shortened form of the Class Notice shall be published by plaintiffs at least in the following newspapers: Washington Post, Washington Times and the City Paper, as well as such regional newspapers as plaintiffs shall determine, in consultation with the Class Administrator, are reasonably necessary to provide notice to the class, not to exceed three regional newspapers, unless plaintiffs obtain consent from defendants, which shall not be unreasonably withheld, or approval from the court. The notice shall be published twice a week for two weeks, in the section of the newspaper ordinarily devoted to local news. Publication shall occur on at least one Sunday for each newspaper with a Sunday edition.

5.   Defendant shall post the Notice on each Unit of the D.C. Jail and the Correctional Treatment Facility, along with extra copies of the Claim Form. The Notice shall remain posted until the period for class members to return the Claim Form has expired.

C.   Deadline for Submitting Claim Forms and to Opt Out

1.   The Class Notice shall advise Class Members that they must file a claim form or opt out by a date certain, or they will nonetheless be bound by the settlement, which date will be at least 60 days from

the time the initial notices are sent out.  Any class member wishing

to pursue a claim must file a Claim Form by that date in order to

participate in the Class Distribution. Claim forms must be

postmarked or received in hand by that date. Any class member

wishing to opt out of this Settlement Agreement must similarly

have either sent a an opt out letter postmarked, or delivered by

hand, by that date.

D.     Submission of Materials Preliminary to the Fairness Hearing.

Within at least 15 days before the Fairness Hearing, Plaintiffs will file

a report with the Court on the number of claims received and the

number of class members who have elected to opt out of the

Settlement Agreement.

E.     Objections

Any person who wishes to object to the terms of this Settlement

Agreement will be required, not less than 30 days prior to the Fairness

Hearing, to submit a written statement to the Court, with copies to

counsel for the parties, setting forth his or her objections. The

statement shall contain the individual's name, address and telephone

number, along with a statement of his or her objection(s) to the

Settlement Agreement and the reason(s) for the objection(s). The

parties shall file a response to any such objections at least 15 days prior to the Fairness Hearing.

F.    Severability

The parties do not intend this Agreement to be severable; if it is not approved in its entirety, either side may withdraw from it within 10 days of the court's determination that it will not accept the settlement agreement as is and the court's indication of the specific modifications to it, in which case this agreement will be null and void.

V. Administrative Issues

1.  Plaintiffs, acting through Class Counsel and the Class Administrator, shall have sole responsibility for determining the class distribution formula, the weight to be given to various factors, and the proportionate distribution between Over-detention and Strip Search Class members, for distribution of the monetary portion of the settlement going to class members, subject to ultimate approval approved by the Court. The Defendant shall take no position on these issues.

2.  The Distribution system that Plaintiffs will propose to the court will be a point system that will rely solely on on the information obtained from the Defendant's (including Superior Court) records,

as supplemented by CSOSA records, with the exception of the
Named Plaintiffs.

3.  No later than July 30, 2005, the District of Columbia shall make
    available, to the extent that such information has not already been
    provided, the name, address, social security number, date of birth
    and driver's license information of class members, to the extent it
    exists and is reasonably available from its records, to Class
    Counsel, to be forwarded to the Class Administrator in
    computerized form (to the extent it exists in computerized form),
    to facilitate locating class members. Such information shall be
    confidential, and may not be disclosed to anyone except counsel of
    record, the Class Administrator, and such representatives of the
    District of Columbia and, to the extent provided by court orders
    and agreement of counsel, counsel of record in *Watson v. District
    of Columbia*, Case No. 02-980 (GK-JMF). This information shall
    cover the class period until June 30, 2005. The period July 1 to
    August 31, 2005, shall be provided in a supplemental submission
    by no later than September 10, 2005.

4.  Defendant shall make available to plaintiffs' counsel from the
    JACCS and CIS computer databases, and other databases, and

paper records, information reasonably necessary for administration and verification of claims, to the extent necessary and reasonably accessible.

5. The Defendant undertakes to use reasonable efforts to assist Plaintiffs in obtaining from Court Services and Offender Supervision Agency ("CSOSA") prior to the deadline for sending notice, upon a written request from Class Counsel the most recent address, social security number, date of birth and driver's license information, to the extent reasonably available, in computerized form, of the Class Members, so that the data can be provided to the Class Administrator.

6. Plaintiffs will use their best efforts to insure that distribution of the settlement amount will occur in such a way as to insure that no residual amount of money will remain following final distribution. This will likely include a second round of distribution to class members who have filed claims for amounts allocated to class members who do file claims but then become unavailable. If some residual happens to remain after all reasonable efforts to distribute funds to class members who have filed claims have been

exhausted, stemming from the accrual of interest, for example, this will revert to the reversion fund defined in ¶ III(A)(3) above.

7.  The reversion of any portion of the class fund to the District of Columbia does not affect the amount of the class fund for purposes of determining the percentage of attorney's fees to be paid class counsel (see Definition of Class Fund Attorney's Fees, above) or the timing of that payment.

## VI. Non-admission

The plaintiffs allege in their Amended Complaint that the Department has engaged in a pattern and practice of over-detention and unlawful strip searching. Defendant denies those allegations. Entry of the Agreement does not operate as an admission of liability by the D.C. Department of Corrections or the District of Columbia of Plaintiffs' allegations.

## VII. Amendments

With the consent of the parties, additional provisions may be added to this Settlement Agreement if needed to assure appropriate implementation and court approval.

Signed and Agreed to by:


DATED: _____          ROBERT J. SPAGNOLETTI
                                        Attorney General

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division


_____
RICHARD S. LOVE [340455]
Chief, Equity I



DATED: _____      _____
MARIA C. AMATO
D.C. Bar #414935
Counsel for District of Columbia
Senior Assistant Attorney General
Civil Litigation Division, Equity Section I
441 4th Street, N.W., 6th Floor South
Washington, D.C. 20001
Phone 202/724-6642
Fax: 202/727-0431



DATED: _____      _____
William Claiborne (446579)
717 D Street, N.W., Suite 210
Washington, D.C. 20004
Ph: 202-824-0700
Fax: 202-824-0745
Attorneys for Plaintiff Class



DATED: _____      _____
Lynn Cunningham (221598)
306 Westview Drive
P.O. Box 1547
Dubois, Wyoming  82513
Ph: 307-455-3334
Fax:
Attorneys for Plaintiff Class

DATED: _____     _____

                                        Barrett S. Litt
Paul Estuar
Litt, Estuar et al.
1055 Wilshire Boulevard, Suite 1880
Los Angeles, CA 90010
Ph: 213-386-3114x217
Fax: 213-380-4585
Attorneys for Plaintiff Class