| | |
|---|---|
| MARCUS BYNUM, et al | DECLARATION OF WILLIAM CLAIBORNE IN SUPPORT OF FINAL APPROVAL ORDER |
| Plaintiffs | |
| v. | |
| GOVERNMENT OF THE DISTRICT OF COLUMBIA, | Civil Action No. 02-956 (RCL) |
| Defendant | |

I, WILLIAM CLAIBORNE, declare and say:

1.      I am one of the Class Counsel in this case. I submit this declaration in support of the Final approval Order.

**UPDATE ON FEES AND COSTS**

2.      In the Fee Petition (docket # 132, filed 11/7/05), Class Counsel provided a summary of the fees and costs to date. The fees to date totaled $2,064,419.60, and the costs to date totaled $87,216.62.

3.      Since the submission of the Fee Petition, Plaintiffs have incurred the following additional attorney's fees (including estimated fees still to be incurred through the hearing):

| Atty | Hourly rate | Number of hours | Dollar amount |
|---|---|---|---|
| William C. Claiborne | $600.00 | 50 | $30,000.00 |
| Barrett S. Litt | $600.00 | 30 | $18,000.00 |
| Julia White [paralegal] | $175 | 4.6 | $805.00 |
| **Total** | | | **$45,805.00** |

4.     Accordingly, the total fees come to $2,110,225.20, before any risk enhancement.

5.     Since the submission of the Fee Petition, Plaintiffs have incurred the following additional costs (minus Class Counsel William Claiborne's expenses):

| Item | Amount |
|------|--------|
| In house copying/ printing/ scanning | $35.64 |
| Research | $25 |
| Expert Fees | $2775 |
| | |
| **Total** | |

6.     Class Counsel Claiborne's book keepers closed their office without advance notice from before Christmas until January 11, 2006 because of a death in the family.  The book keepers returned on January 12 and are working on totaling Class Counsel Claiborne's Bynum expenses incurred since 11/7/05 when plaintiffs filed the Fee Petition.  Class Counsel Claiborne will submit a statement of the expenses he has incurred since filing the Fee Petition as soon as he gets the figures from the book keepers (which should be before Thursday, 1/18/06).  These expenses are not expected to exceed $500.00.

7.     Accordingly, Plaintiffs ask that the Court award a total of $90,052.26 in costs to Class Counsel (plus Class Counsel Claiborne's

expenses incurred since 11/7/05), exclusive of costs to the Class Administrator.

8.      Plaintiffs have separately submitted the Declaration and other materials from the Class Administrator, Rosenthal & Co. The Class Administrator to date has incurred $201,224.46 in costs.  The District has paid $105,039.57 to date leaving a balance of $96,184.89.  We seek authority to have the District immediately pay Rosenthal & Co. $96,184.89 to cover Rosenthal's billings to date, to be paid from the $5,000,000 portion of the class fund allocated to payments to class members. Under the settlement agreement, this money is the responsibility of the District whether the settlement is ultimately approved or not. The future Class Administration fees and costs will be paid from the Class Fund after it is transferred to Rosenthal under the terms of the Final Approval Order.

### THE FINAL APPROVAL ORDER

9.      The narrow legal issue currently before the Court on the final approval issue is whether or not to grant final approval to the proposed class settlement.  This Court formulated the applicable standard in the Neal case as:

> [T]he law provides that a district court shall not approve a settlement in the class action context absent a finding that the settlement as a whole is "fair, adequate, and reasonable." As the

Court of Appeals has recently explained, "'[t]he court's primary task is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case. The court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial." (citation omitted) . Likewise, it is the court's duty to evaluate the proposed settlement with a view toward protecting the interests of the class as a whole. While the positions and interests of individual plaintiffs, named and unnamed, are a central consideration in the court's determination, a settlement that is fair, adequate, and reasonable for the class as a whole should be approved even though a substantial number of class members may object. (citations omitted).

Memorandum Opinion, <u>Neal v. Director, Department of Corrections</u>, 93-cv-02420 (RCL) June 28, 1999, pages 19-20.

10.     Plaintiffs have submitted a revised Final Approval Order concurrently with this Declaration. It makes no substantive changes to the one originally submitted to the court, except for the changes related to the distribution formula noted in Footnote 1. (We previously submitted that change to the court.) The revised Final Approval Order does make clarifying non-substantive changes.  The revised Final Approval Order also contains the language regarding the use to which the reversion funds are to be put, which provisions were first submitted to the court in November 2005, concurrently with the filing of the Fee Petition.

## DOCUMENTS RECEIVED FROM CLASS MEMBERS THAT DO NOT APPEAR TO BE OBJECTIONS

4

11.    Two documents were received from class members raising issues about the settlement that plaintiffs' counsel considered to be raising individual issues rather than objections to the settlement, each of which is discussed in the following paragraphs.

George Keitt mailed a document dated December 22, 2005,to the District Court. It was marked received December 23, 2005, by the District Court. Plaintiffs' counsel received a copy from Rosenthal & Co., who received it from the court. It does not appear to actually be an objection, but rather a claim form that was mailed to the Court rather than to the Class Administrator. The Clerk forwarded the claim form to the Class Administrator.  The document says that Mr. Keitt was overdetained for 24 hours, but it does not explain what issue he is writing about. A copy is attached as Plaintiffs' Exhibit # 1.  Plaintiffs recommend that no action need be taken regarding Mr. Keitt.

Gregory Bess through counsel, James Fishkin, of Dechert LLP, sent a letter dated December 23, 2005, by certified mail, to Class Counsel, which Class Counsel received on December 28, 2005, stating that he was overdetained more days than the number of days shown on his claim form. A copy of Mr. Fishkin's letter is attached as Plaintiffs' Exhibit # 2.  The remedy Mr.

Fishkin's letter seeks is obtaining a copy of his client's institutional file and correcting the information on the claim form with the documents in the institutional file. Mr. Fishkin's letter does not seek a class wide remedy. Rather than an objection to the terms of the Bynum Settlement Agreement the letter states an intent to correct an error in Mr. Bess' claim form. Mr. Fishkin's letter also asks Class Counsel to tell him the dates of Mr. Bess' incarceration[1]. Mr. Fishkin's letter does not request that he or Mr. Bess speak on his behalf at the Final Fairness Hearing. The letter does not submit copies of Mr. Bess' District of Columbia records relating to his incarceration in the DC Jail substantiating his challenge. Mr. Fishkin's letter does not show a District Court "received" stamp and the letter has not been docketed as an objection.

In a "statement" attached to Mr. Fishkin's letter, Mr. Bess says that the information on his claim form regarding his over-detention is incorrect, because, he says: (1) the claim form credited him an overdetention of only 30 days, (2) when in fact, he says, he was overdetained for 60 days.

---

[1] Class Counsel provided a copy of Mr. Bess' claim form to Mr. Fishkin, informed him that Mr. Bess was detained on a contempt charge on case PS 3198-97P from 9/1/99 until 10/12/99 when he was released, and suggested that he obtain a copy of the Superior Court jacket in PS 3198-97P because documents in the jacket might shed light in Mr. Bess' detention. Class Counsel cannot access the Superior Court jacket in PS 3198-97P because it is sealed to non-parties because it is a paternity/ child custody case.

But, the information on the claim form sent to Mr. Bess and which Mr. Bess filled out, signed under penalty of perjury, and submitted to the Class Administrator on 11/19/05 indicates that (1) he is a member of the Strip Search Class; but that (2) he is **not** a member of the Overdetention Class.  A copy of the claim form Mr. Bess submitted to Class Administrator redacted to delete his social security number is attached as Plaintiffs' Exhibit # 3. The claim forms shows that Mr. Bess was committed to the DC Jail on 9/1/99 ("Commitment Date"), ordered released on 10/12/99 ("Release Date"), and actually released on 10/12/99("Exit Date"), and the claim form has a heading "Days Overdetained" **which lists "0" as the number of days overdetained**.  A legend above the signature line (which Mr. Bess signed on 11/19/05 under penalty of perjury) states that by signing the claim form Mr. Bess confirms that the information on it is correct.  Mr. Bess did not make any marks on the claim form indicating that the information on the claim form was incorrect.

Therefore, the information on Mr. Bess' claim form raises a threshold question of whether he is in fact a member of the Overdetention Class. Membership in the Strip Search Class does not qualify Mr. Bess for membership in the Overdetention Class because the class definitions are different.  The records as reflected in the claim form indicate that Mr. Bess

was *detained* for 42 days, but not *overdetained* for any days because he was not held past his court ordered release date.  So, the District's records of which plaintiffs are aware indicate Mr. Bess is not a member of the Overdetention Class.

If Mr. Bess is not a member of the Overdetention Class, he has no standing to object to the Overdetention Class component of the Bynum Settlement Agreement.  Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993)(persons who are not class members because they are outside the definition of the class or have opted out lack standing to object to settlement agreements on appeal).

The only basis for Mr. Bess' contention that he is a member of the Overdetention Class is his unsworn statement saying that he was overdetained 30 days more than the period of overdetention shown on the claim form he submitted.  However, the preliminary approval order and the claim form sent to Mr. Bess all state that determinations of class membership will be made based on the records of the District of Columbia, which are reflected in the claim form.  Neither the Bynum Settlement Agreement nor the preliminary approval order as entered by the Court nor the claim form provides a procedure for class members to challenge the

information on their claim forms.  The revised Final Approval Order at ¶ states: "Determination of days of overdetention is based solely on the Defendant's records as interpreted by Plaintiffs' experts and the Class Administrator (including as adjusted based on jackets for those whose jackets are available and may be examined by Plaintiffs)."  (docket # 129 exhibit # 6; approved by the Court at docket # 130)  Persons who believed that the information on their claim forms were free to object or to opt out and to pursue a private lawsuit.  Neither Mr. Bess nor any other person objected to the lack of such a procedure.  Class Counsel elected not to have a verification/challenge procedure because they believed the electronic records of the District were as reliable as the paper records, because (1) the data from the paper records was entered into the Department of Corrections' computerized booking system, and (2) such a procedure would consume the Class Fund.  The Class Administrator's declaration (submitted herewith) shows that only about 2% of claimants challenged or complained about the accuracy of the data in the claim form regarding overdetentions and strip searches, which suggests a high degree of reliability of the District's electronic records.  Class Administrator's declaration, ¶ 19.

Plaintiffs recommend that because Mr. Bess did file a letter before the expiration of the deadline challenging the information on his claim form that

(i) if his Department of Corrections jacket is "available" and can be located by the date of the Final Fairness Hearing, and (ii) the records in his jacket establish Mr. Bess' membership in the Overdetention Class, then (iii) Mr. Bess' claim be allowed to the extent provided by the records in his jacket. Plaintiffs do not believe further extensions of time are warranted because the revised Final Approval Order limits use of jackets to jackets that are "available" and Mr. Bess' statement indicates that he believed the overdetention data on the claim form was incorrect when he signed it on 11/19/05 (Plaintiffs' Exhibit # 3) but he did not make a statement on his claim form or call the 1-888 number or call any of the three Class Counsel or act on this belief vis-à-vis the class until submitting a letter more than a month later on 12/23/05, and he did not submit District of Columbia generated records substantiating his challenge.  Plaintiffs recommend that if District of Columbia records establishing Mr. Bess' membership in the Overdetention Class cannot be located by the date of the Final Fairness Hearing, then the Court allow Mr. Bess to opt out, if he so chooses, given the specific concern he has raised about the accuracy of his records.

If the Court does treat Mr. Bess as a member of the Overdetention Class for purposes of addressing his letter, it would appear that Mr. Bess' letter was particular to him, and not a general objection to relying on the District's

records for making awards. If it were so construed, we note that resort to any means other than reliance on the District's records as reflected in the claim forms would present enormous administrative and practical problems. Such a procedure would eat up substantial resources that would otherwise go to class members. It could lead to substantial delay in distribution of monies to class members while individual class members litigated the time they claim should be allotted them. Accordingly, if the Court does consider this an objection, it is not a valid one.

## DOCUMENTS RECEIVED FROM CLASS MEMBERS THAT APPEAR TO BE OBJECTIONS

12.     Jerome Hill sent a document dated December 20, 2005, by regular mail, addressed to the Clerk of the Court, to the offices of Class Counsel William Claiborne which was received by Class Counsel on December 28, 2005. The letter is marked "Copy for William Claiborne." There is no date stamp and no docketing of the objection. Thus, the court must determine if this is a timely filed objection. A copy is attached as Plaintiffs' Exhibit # 4.

     a.   The substance of Mr. Hill's objection is that he will receive a very small amount while the attorneys receive a very large amount. He was strip searched twice after being acquitted. He

feels that his compensation is not just in light of his actually being acquitted. We construe this to be an objection to the size of the attorney's fees.

13.     Wesley Baker sent a document dated December 10, 2005, by regular mail, addressed to the Clerk of the Court. Class counsel received a copy no later than December 23, 2005. There is no date stamp and no docketing of the objection. Thus, the court must determine if this is a timely filed objection. A copy is attached as Plaintiffs' Exhibit # 5.

a.   The substance of Mr. Baker's objection is that "the amount of money that the attorneys are asking for isn't more important than the amount the defendants should receive for all that we were put through."

14.     Cedric Tonkins sent a letter dated December 23, 2005, addressed to Class Counsel William Claiborne, with copies to the Clerk of the Court and Maria Amato. It has a postmark (and Institution Timestamp from where it was sent) of December 30. It was received in the mail on January 6, 2006, by Class Counsel William Claiborne at his office. There is no date stamp and no docketing of the objection. Thus, the court must determine if this is considered a timely filed objection. A copy is attached as Plaintiffs' Exhibit # 6.

a. The substance of Mr. Tonkin's objection is to the payment of $3,000,000 to District of Columbia programs. He apparently, though it is not clear, also objects to the request for attorney's fees. He also contends that each class member should receive the amount of $200,000.

15. Richard Jones served by hand on plaintiffs' counsel a document dated December 23, 2005, addressed to the Clerk of the Court, titled "Motion in Opposition to Settlement and Attorney's Fee." It has a court "Received" stamp of December 23. However, the objection is not docketed. Plaintiffs believe the Court received the document only after the clerk was advised of its existence by plaintiffs' counsel, who then provided it to the court. Thus, the court must determine if this is a timely filed objection. A copy is attached as Plaintiffs' Exhibit # 7.

a. Mr. Jones first objects on the ground that none of the settlement money should be devoted to the District's effort to solve the records office problem that led to the lawsuit. Mr. Jones' second objection is that the settlement improperly uses a formula that gives greater weight to some people's criminal record, background and the nature of their offense than others in determining the number of points awarded. Mr. Jones

appears to partially misconstrue the terms of the settlement in that the overdetention formula under the settlement does not consider the factors he objects to (but the strip search formula does). Mr. Jones' last objection is that the requested attorney's fees are too high. He proposed that the attorney's fees should be approximately $250,000, and that a total of $10-$11 Million be distributed to the class members.

16.    Kevin Quick submitted a claim form to the Class Administrator on about December 22, 2005.  Attached to the claim form is a three page letter setting out Mr. Quick's objections to the Settlement.  Copy attached as Plaintiffs' Exhibit # 9 (redacted to remove social security and driver's license data).

a. However, the objection is not docketed and does not have a court stamp, and it was not served on counsel as required by the settlement papers. Thus, the court must determine if this is a validly filed objection.

b. Mr. Quick first objects on the ground that the attorneys' fees are excessive without saying why.  Mr. Quick's second objection is that the settlement improperly uses a formula that takes into consideration arrest history because he believes the police

frequently arrest young black men without probable cause due to racial profiling.  Mr. Quick also requests copies of the records on which his award was based.

17.    We take no position on whether the court should consider particular objections timely filed, and leave that to the judgment of the court. The Notice clearly states that objections must be filed with the court and served on the parties' counsel, and many of these "objections" were not filed with the court or served on defendant's counsel to the best of our knowledge.  On the merits of the issues raised, none of the objections is well taken. Our view is that none of these objections provide any reason to alter the terms of the settlement in any respect, or to alter the amount of attorney's fees requested. We make some general observations and then address the substance of each objection, by category, below.

    a.  There were 5 documents received by counsel that appear to be objections to either the settlement and/or the Motion for an award of attorneys' fees filed (Jones, Hill, Baker, Quick and Tonkins), and two documents that appear to be raising individual issues rather than settlement objections (Keitt and Bess). Three class members opted out. (See Declaration from Rosenthal & Co.) These figures strongly militate in favor of

settlement. For example, in the <u>Neal</u> case, 4 of the 8 named plaintiffs objected to the settlement agreement but the Court still approved the settlement.  <u>Neal</u> Memorandum Opinion at page 22.  There were 60 comments or objections, from a total of about 250 claimants, of whom 125 were deemed to be class members. <u>Neal</u> Memorandum Opinion at pages 14 and 27. The Court concluded that, individually or cumulatively, the objections did not justify rejection of the proposed settlement. Although objections clearly warrant careful consideration before a decision on approval or disapproval is made, it is well settled that the objections of several plaintiffs, either named or unnamed class members, does not prohibit a court from approving a consent decree.  <u>See, e.g.</u>, <u>Stoetzner v. U.S. Steel Corp.</u>, 897 F.2d 115, 118-119 (3d Cir.1990) ("only" 29 objections in 281 member class "strongly favors settlement"); <u>In re Prudential Ins. Co. of America Sales Practices Litigation</u>, 148 F.3d 283, 318 (3d Cir.1998) (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected). Here, there were three opt outs, and six putative objections, out of 25,833

mailings to the 25,402 Class Members. The percentage of opt outs is slightly lower than that in the <u>Prudential Ins.</u> case, and the percentage of objections is slightly higher. Both are very low. Less than one of every 3,000 people either opted out or objected to the settlement. Thus, the overall class response to the settlement strongly favors its approval without modification from the terms proposed.

b. The first type of objection (made by Jones and Tonkins) is that the District should not receive any of the settlement monies for the programs related to the objectives of the settlement. Mr. Jones asserts that the total to be distributed to class members should be $10-$11 Million, and Mr. Tonkin asserts that each class member should receive $200,000. This was both an injunctive relief and damages action, and it is fully appropriate that the settlement address both. It was both reasonable and necessary for the settlement to address how the problems were going to be solved going forward. The monetary relief is reasonable especially when viewed in conjunction with the broad equitable relief provided for in the agreement and the parties' proposal for spending

the reversion fund.  Neal v. Department of Corrections, page 23.  The settlement requires the District of Columbia to devote at least $3 Million for specified projects aimed at this issue. As it turns out, the District has now committed to spend $2 million more (Plaintiffs' Exhibit # 8, District's proposal letter).  From the perspective of the class members, this was preferable to an open ended commitment by the District to solve the problem, and a settlement for less money, which would have been the likely alternative. This approach ensured that the District would have to devote substantial resources to this problem, and unquestionably spurred the District to upgrade its inmate reception and discharge facility, an event that was unlikely absent the settlement. The amounts requested by Mr. Tonkins are obviously absurd. Accordingly, this objection is not well taken.

The second type of objection (made by Jones, Hill, Baker, Quick and presumably Tonkins) is that the requested attorney's fees are too high. Four comments do not go further, and just assert that they are too high. Mr. Jones is more specific, and asserts that the attorney's fees should be approximately $250,000 (and that, in conjunction with the elimination of the money to the

District, the class should receive a total of $10-$11 Million). Mr. Jones

concedes that the standard fee is 33%.  But, in fact, the standard fee in civil

rights cases is 40%.  We presented evidence in the Fee Petition that the total

attorney's fee, without a multiplier, amounts to over $2 Million without any

risk enhancement. We also presented evidence regarding market expectation

and standards, as well as legal authority in support of our request. We have

requested $4 Million (1/3 of the class fund) in fees. This request is

reasonable and is consistent with market expectations and governing case

law in this Circuit. Swedish Hosp. Corp. v. Shalala, 1 F.3d 1261, 1265, 1272

(D.C. Cir. 1993); In re Vitamins Antitrust Litig., 2001 U.S. Dist. LEXIS

25067, 36 (D.D.C. 2001) (Court awarded approximately 34% of a settlement

fund calculated to be approximately $ 360 million); In re Baan Co. Secs.

Litig., 288 F. Supp. 2d 14, 21 (D.D.C. 2003)(reducing counsel's requested

fees from 32% to 28% because of problems in counsel's performance); In re

Lorazepam & Clorazepate Anittrust Litig., 2003 U.S. Dist. LEXIS 12344

(D.D.C. 2003)(award of 30% of the common fund in attorneys' fees is

appropriate); In re Baan Co. Secs. Litig., 288 F. Supp. 2d 14, 19 (D.D.C.

2003)(awarding requested percentage award of 32%); In re First Databank

Antitrust Litig., 209 F. Supp. 2d 96, 101 (D.D.C. 2002)(Court awards class

counsel for the direct purchaser settlement class a fee calculated at thirty

percent (30%) of the $ 8 million attributable to their efforts, or $ 2.4 million, reduced because counsel "piggy-backed" on previous litigation).

    c.  The objections reflected no appreciation of the issues involved in making an appropriate attorney's fee determination, of the work involved in crafting a settlement such as this, of the skill and expertise necessary to obtain such a result, of attorney's rates, or of the other relevant factors.

    d.  The third type of objection (Jones and Quick) is that the settlement improperly uses a formula that gives greater weight to some people's criminal record, background and the nature of their offense than others in determining the number of points awarded. First, as a general matter, assigning damages among class members based on a distribution formula does not violate due process concerns.  In a false arrest class action case the District of Columbia Court of Appeals approved assigning damages without individualization by determining damages for the class as a whole, and then allocating the damages to class members according to a damages matrix based on length of detention.  <u>Dellums v. Powell</u>, 566 F.2d 167, 189 (D.C. Cir. 1977).  Secondly, Mr. Jones partially

misconstrued the terms of the settlement. The variation in points based on record, background and the nature of the offense is only for strip searches, not overdetentions. Thus, to the extent that this is an objection to the formula for overdetentions, it is not applicable. With regard to the strip searches, the formula we proposed presents a very well calibrated assessment of the factors that we believe would affect a jury's damages determination, which would likely vary widely based on those factors. We have based this assessment on our own experience in settlement, as well as on reviewing jury verdicts. We believe that one possible reason for the very low number of opt outs is that those more damaged are accounted for in the distribution formula, and therefore concluded they would be reasonably compensated, although this is admittedly speculative. We also note that Mr. Hill implicitly suggests that such factors as acquittal should have a bearing on assessing damages. Thus, Mr. Hill and Mr. Jones have partially contradictory objections, depending on the construction of Mr. Hill's objection.

18.     We have prepared a proposed Order on the Objections, and on the Attorney's Fees, which we are submitting concurrently with this Declaration and with the revised Final Approval Order. Once we know the Court's final ruling, we can prepare final orders, of, if the court prefers, can include them in the Final Approval Order.

19.     When all the disputed claims come in, there will probably be a total of around 80 such claims. (See Rosenthal & Co. Declaration.) We are defining a disputed claim as one in which the claimant has asserted by writing on the claim form that the Department of Correction's information contained in the claim form is wrong.  Only about 2% of the claim forms received by the Class Administrator are "disputed claims" under this definition.  Unless the court ultimately directs otherwise, the settlement calls for the District's records to be conclusive, and the only option for a class member challenging the accuracy of the information on his claim form is to accept the claim form information or opt out. The small number of disputed claims relative to the number of claim forms submitted (about 2%) indicates the reliability of the District's records.  Thus, as things currently stand, those 80 claims would be handled the same as all the others. Class Counsel recommend that the court not modify the order to consider the information provided in these disputed claims. It would eat up a substantial amount of

class resources to verify the disputed information, which would require that someone review Department of Corrections and court records and attempt to determine the validity of any such contention, and then make individual recommendations to the Court. The settlement was structured to avoid such effort, in order to maximize the return to the class members. Those who disputed the information could have objected or opted out and pursued their remedies individually, which would have preserved their rights without consuming class resources.  No one objected to this procedure.

20.     According to the Rosenthal Declaration, there have been a total of 3674 timely claims and to date 89 late claims (i.e., claims postmarked after December 23, 2005). Unless the court ultimately directs otherwise, the settlement calls for those late claims to be rejected. Thus, as things currently stand, those 89 claims would be paid according to the District's records. Class counsel takes no position one way or the other on whether the court should modify the terms of the settlement to accommodate these claimants, except as stated below.

21.     There is one claim form filed after the submission deadline which Class Counsel does recommend be allowed. Mr. William Cole called Class Counsel William Claiborne after the deadline and stated that he had called the 1-888 number and requested a claim form at least twice, starting

in October, but that he had never received a claim form.   Class Counsel

William Claiborne contacted the Class Administrator and discovered that the

Class Administrator had twice during the claim period sent Mr. Cole claim

forms that he did not receive because the claim forms were returned as

"undeliverable.  The Class Administrator mailed the first claim form,

Claim#: 700013301, on 10/26/2005 and received it back marked "RUM"

(returned as undeliverable mail) on 12/2/2005.  The Class Administrator

mailed the second claim form, Claim#: 700087001, out on 11/14/2005 and

received it back marked "RUM" on 12/2/2005.  See Class Administrator's

declaration, ¶ 13.

Class Counsel William Claiborne instructed the Class Administrator on

1/10/2006 to send Mr. Cole another claim form to a different address he

provided.  Class Counsel recommend that the claim be allowed if the Class

Administrator receives this claim form from Mr. Cole before the Final

Fairness Hearing Class Counsel recommend that, even if the Court does not

allow the other late claims to be considered, it do so for Mr. Cole, because

Mr. Cole clearly and timely evidenced his intention to file a claim, but he

was unable to do so through no apparent fault of his own.

     22.    I declare, under penalty of perjury, that the foregoing is true and

correct. Executed at Washington DC, on January 16, 2006.

_____sig_____
William Claiborne

## CERTIFICATE OF SERVICE

I hereby certify that I caused to be served copies of the papers attached hereto on Mr. Richard Jones by messenger on January 16, 2006 at 1427 22d Street, SE, Washington, DC, 20020 because he was the only objector who asked in his objection to be heard at the Final Fairness Hearing, as the Notice requires.  I served the papers by e-mail on Mr. Bess care of Mr. Fishkin on January 16, 2006 at Dechert LLP, 1775 I Street, NW, Washington, DC 20006-2041.
.

I caused the other objectors and putative objectors to be served by posting the papers on the class website at www.bynumclass.com.

Included in the service was written notice confirming that the Final Fairness Hearing is set for January 20, 2006 at 10:00 am at the United States District Court Courthouse at 333 Constitution Ave., NW
Washington, DC  20001.